INTERNATIONAL GARDEN CLUB, INC., Plaintiff, *v.* JOSEPH P. HENNESSY, as Commissioner of Parks of the Borough of The Bronx of the City of New York, and THE CITY OF NEW YORK, Defendants.

(Supreme Court, Bronx Special Term, July, 1918.)

Contracts — when valid — city of New York — lease — when plaintiff granted injunction to prevent its ouster from city park.

A contract by which the city of New York through its park commissioner leased to plaintiff, an incorporated club, formed not for profit, the privilege of occupying for three years an

undeveloped plot of ground which plaintiff, at its own expense, was to convert into an horticultural garden, under plans to be approved by the park commissioner, at an annual cost of at least $3,000, and likewise at its own expense to improve and repair a dilapidated building on the land according to plans to be approved by said commissioner, is valid.

Where all the work to be done by plaintiff was completed at great expense and with the commissioner's approval, and frequent public lectures given, and not only during all the term was no objection raised by the city or its representative that plaintiff had not kept its agreement, but the contract was renewed, the plaintiff, in an action to prevent the defendants from ousting it from the property under a threat contained in a notice by the park commissioner by which he undertook to revoke the agreement upon a claim that plaintiff had failed to comply with its conditions relating to the manner in and the purposes for which plaintiff was to use the property, will be granted a preliminary injunction to prevent such ouster until the trial of the action.

MOTION for an injunction.

Middlebrook & Borland (Middleton S. Borland, of counsel), for plaintiff.

William P. Burr, Corporation Counsel, John Lehman, Assistant Corporation Counsel, for defendants.

OTTINGER, J.   This is a motion by plaintiff to prevent the defendants, until the trial of the action, from ousting plaintiff from that portion of the Pelham Bay Park of which it is in possession under an agreement dated September 4, 1914, as renewed by an instrument under date of December 11, 1917.   Each of these agreements was made between plaintiff and the city of New York, through its park commissioner.   The threat to remove plaintiff is distinctly contained in a notice by the park commissioner, dated May 27, 1918, undertaking to revoke the agreement, and is predicated upon

the claim that plaintiff has failed to comply with conditions of the agreement relating to the manner in and purposes for which plaintiff was to use the property. Although this notice — given during the fourth year of the contract — makes no claim that the agreement was void in its inception, such contention is now strenuously urged by defendants, and as the question whether or not the contract, if valid, has been performed by plaintiff cannot properly be determined until the trial, I ·shall consider but two questions: *First,* the validity of the contract, and *second,* the proper scope of the preliminary injunction if granted. I entertain not the slightest doubt of the validity of the contract. At the time of its making the plaintiff was, as the city and park commissioner well knew, an incorporated club, formed not for profit but for the purposes (stated in its certificate of incorporation) of establishing " horticultural gardens," and " for the instruction and recreation of the people " to expend money " for horticultural research and publication " and kindred subjects, and to co-operate with similar associations wherever located. Its very charter, therefore, stamped it as an educational and *quasi* public institution. At that time the tract of land in question was evidently a park in name only, and was an undeveloped plot containing a dilapidated building, referred to in the contract as the " Bartow Mansion," and the contract states that the premises were leased to plaintiff for three years " for the purpose of establishing thereon a horticultural garden." In return for this privilege plaintiff agreed in substance, at its own expense, to convert the grounds into a horticultural garden under plans to be approved by the park commissioner, at an annual cost of at least $3,000, and likewise, at its own expense, to improve and repair the Bartow Mansion according to plans to be approved by

the commissioner, and to maintain it in good condition to his satisfaction and subject to his approval; and at the end of the term of three years the entire grounds and building so improved were to be turned back to the city without cost, provided that in the absence of a notice given at least thirty days prior to the expiration of the term the contract was to be extended for five years, as was done by the agreement of December, 1917. In a word, therefore, the contract was that the plaintiff should, at its own expense, build a park for the city upon this ground, and all that plaintiff was to receive in return was the privilege of occupying the ground and building for the specified period. It is not easily understood how the validity of such an agreement can be challenged. Certainly the city itself could have built the park and rehabilitated the building. It could have contracted to have it built and have paid a large amount of money for the purpose; and it could, beyond question, give this comparatively short privilege of occupation in lieu of a money payment. The legality of such an agreement is far clearer than that which the courts upheld in *Gushee* v. *City of New York,* 42 App. Div. 37, and by which the city granted the plaintiff in that case the right, for five years, to conduct for profit the " Claremont " restaurant in a building owned by the city in one of its parks. In the case at bar, as has been pointed out, the plaintiff was not organized for profit. On the contrary the agreement restricted the use of the grounds to a "-horticultural garden and the general purposes of the society; " gave the park commissioner access at all times to the grounds and building for general police visitation and supervision; gave the public free access to the gardens five days a week, including Sundays and holidays; required plaintiff, even as to the privileges granted it, to conform to all

rules, regulations and ordinances of the park department and park commissioner; gave defendants the right to revoke the agreement at any time if the property should be required by the city for other park purposes or for any reason made necessary by public purposes. It contained further clauses to the effect that plaintiff could, under no circumstances, hold the defendants or any of their officers liable, either personally or in their official capacity, for any act they might do. The agreement, therefore, was singularly one-sided in favor of the city. But it is said that the contract is void because it allowed the property to be closed to the public on two days a week, exclusive of Sundays and holidays. While under the foregoing principles such a provision would undoubtedly have been valid, the fact is the agreement contains nothing of the kind; but on the contrary, the clause referred to, if properly read, is really in favor of the city. It provides that plaintiff may, during such two days, close that. *part* of the premises devoted to "the horticultural collection," and charge an admission fee, fixed with the commissioner's approval, *and that the moneys so received shall be expended in improving the gardens and buildings,* which become the city's property when the lease expires. The mere statement of this provision refutes the claim that it vitiates the contract. The contract being valid. an injunction must issue, unless I were satisfied that the opposing affidavits clearly established a substantial breach of the agreement by plaintiff. But although I do not wish to determine the facts which necessitate a trial, I am far from being so satisfied. All the work to be done was completed at great expense and with the commissioner's approval. More than $70,000 was spent, frequent public lectures were given, and during all these years no objection was raised by the defendant or its repre-

sentatives. Indeed, the contract was renewed in 1917— an act utterly inconsistent with any claim that plaintiff had breached the agreement. Defendants' claim that the park was surrounded by a high wire fence exclud· ing the public is met by the uncontradicted fact that the inclosure was erected by the commissioner's direction, and by the obvious consideration that it was necessary for the protection of the grounds. It is not claimed that the gates were not always open. Nor was it necessary that any sign be erected indicating that the park was public. The commissioner could have so ordered had he desired it. Central Park is surrounded by stone walls, contains no signs inviting the public, and yet its devotion to the people's use is not questioned. Nor do the facts that plaintiff's members were persons of social prominence and that the house was elaborately furnished impress me. There is not even a claim by defendants that any member of the public who applied for membership in the club was excluded. Moreover, plaintiff was authorized to use the Bartow Mansion for its corporate purposes, and the contract contained no limitations as to the character of its membership, which was, almost of necessity, composed of men of means if they were willing to contribute the large amount of money expended upon the grounds, for pur- poses contemplating no profit or financial return; and the provision that plaintiff was at liberty to remove at the end of the contract its " library, pictures, fur- niture " and other movable property shows that it con- templated furnishings in accordance with plaintiff's convenience. Nor does the fact that during this period of over three years there were four or five occasions when plaintiff's president and a few guests slept on the premises establish any breach of the agreement. Defendants quote extracts from the by-laws prohibiting visitors except upon proper introduction, but these

related to the club only, and not to the grounds or horticultural gardens, and besides were known to defendants when the contract was made. At the argument I was of the impression that an injunction restraining merely forcible removal would suffice, and that defendants might be permitted to proceed by legal action in some appropriate court if they claimed plaintiff had violated the agreement. But the facts that defendants do not renounce their purpose to proceed by force, that it is doubtful whether in any such action the rights of plaintiff could be adequately protected, that if the plaintiff succeeds in this action it will be entitled to a full injunction preventing any action by defendants, and that therefore its preliminary relief should be as broad in scope as the final relief, and that a court of equity having once obtained jurisdiction will retain it for all purposes, lead to the conclusion that plaintiff is entitled to the preliminary injunction as prayed for. If the parties can agree upon the amount of the undertaking an order may be submitted on notice.

Ordered accordingly.