WILLIAM H. WILLIAMS, Plaintiff, *v.* FRANCIS D. GAL-
LATIN, as Commissioner of Parks of the City of New
York for the Boroughs of Manhattan and Rich-
mond; THE CITY OF NEW YORK, and SAFETY INSTI-
TUTE OF AMERICA, Defendants.

(Supreme Court, New York Special Term, July, 1919.)

Taxpayers' action — city of New York — lease.

The city of New York may lawfully lease the Arsenal build-
ing in Central Park for purposes of a museum.

TAXPAYER'S action.

William B. Roulstone, for plaintiff.

William J. Moran, for defendant Safety Institute of
America.

William P. Burr, corporation counsel, for defend-
ants Gallatin and City of New York.

LUCE, J.  The plaintiff, a taxpayer, seeks to enjoin
the defendant New York city park commissioner from
executing a lease of the Arsenal building in Central
Park to the other defendant, Safety Institute of
America, for a term of ten years, upon the ground
that the use of the premises by the tenant for the pur-
poses expressed in the lease is contrary to the Greater
New York charter in that it is foreign to park pur-
poses.  The complaint alleges that Central Park is a
public park, owned by the city of New York; that the
Arsenal building is located in Central Park, and is a
part thereof, and is intended for use solely as public
park property; that the defendant Francis D. Gallatin,

Supreme Court, July, 1919.          [Vol. 108.

as commissioner of parks, is the chief executive in charge of the administration, management and control of Central Park and of the Arsenal building; that under the provisions of section 612 of the Greater New York charter, said Francis D. Gallatin, as commissioner of parks, is charged with the duty of maintaining the beauty and utility of Central Park, and is further charged with the duty of instituting and executing all measures for the improvement thereof, for ornamental purposes and for the beneficial uses of the people of the city of New York, and that he is further charged with the duty, among others, of preventing any use of Central Park which does not aid the beneficial use thereof by the people of the city of New York, and does not contribute to its use and enjoyment by said people; that under section 627 of the Greater New York charter it is unlawful for the defendants to grant, use or occupy for the purposes of a public fair or exhibition any portion of Central Park; that the defendants entered into a certain agreement in writing, a copy of which is attached to the complaint; that the defendants planned to proceed with the performance and execution of the terms of this lease, and with the use and alteration of the said Arsenal building; that the use of Central Park or the Arsenal building for any of the purposes referred to is illegal, and violates the sections of the Greater New York charter referred to, and will not aid in, but will impede and materially hinder, the beneficial use of the said Central Park by the public and the people of the city of New York, and will not contribute to, but will detract from, the use and enjoyment of the said Central Park by the public and people of the city of New York, and will not enhance, but will diminish, the opportunities of the people and public of the city of New York to use and enjoy the said Central Park as

a place of resort, amusement, recreation and exercise; that it was illegal for the defendants to enter into said lease, and that the defendant Gallatin, as commissioner of parks, exceeded his power in executing said lease; and that the erection, construction, alteration and occupancy of the Arsenal building will substantially damage and injure the property of the city of New York, and will damage and injure the said Central Park in its use and enjoyment by the taxpayers, citizens and public of the city of New York. The lease recites it is made " in order to promote and increase the public enjoyment, use and convenience of the public park known as Central Park." The lease further provides " that the said building, after it shall have been altered and repaired as herein provided for, shall be kept open and accessible to the public hereafter free of all charge throughout the year, five days in each week, one of which shall be Sunday afternoon, and also for two evenings in each week, within such hours and subject to such rules and regulations as may be determined by the trustees of said institute; and also that on the two days in each week during which said building may remain closed to the general public it shall be open and accessible to students, schools, and societies organized for the purpose of promoting means and methods of safety and sanitation within such hours and subject to such rules and regulations as may be determined by the trustees of said institute." The defendant Safety Institute of America was formerly known as the American Museum of Safety, but on November 22, 1918, by order of this court, the said name American Museum of Safety was changed so that said corporation defendant is now named the Safety Institute of America. The American Museum of Safety, now the Safety Institute of America, was incorporated by chapter 152

of the Laws of 1911, which, by section 2 thereof, defines its objects as: "Sec. 2. The objects of the corporation hereby created are to study and promote means and methods of safety and sanitation and the application thereof to any and all public or private occupations whatsoever, and of advancing knowledge of kindred subjects, and to that end to establish and maintain a museum, library and laboratories, and their branches, wherein all matters, methods and means for improving the general condition of the people as to their safety and health may be studied, tested and promoted, with a view to lessening the number of casualties and avoiding the causes of physical suffering and of premature death, and to disseminate the results of such study, researches and test by lectures, exhibitions and other publications." Chapter 466, Laws of 1914 (Greater N. Y. Charter, § 244a), authorizes the board of estimate and apportionment of the city of New York to appropriate annually "such sum as it may deem proper, not exceeding fifty thousand dollars, for the keeping, preservation and exhibition of safety devices and means and methods of sanitation in the building, or any part thereof, in the city of New York, now or hereafter occupied by the American Museum of Safety." The lease prohibits any commercial transactions or gainful pursuits upon the demised premises. No rent is reserved in the lease, but the tenant is obligated to expend not less than $50,000 in alterations, repairs and improvements upon the demised premises according to plans subject to the park commissioner's approval. The tenant's covenants comply with the requirements of section 244a of the charter, the lease providing: "The said building * * * shall be kept open and accessible to the public hereafter free of all charge throughout the year, five days in each week, one of which shall be

Sunday afternoon, and also for two evenings in each week, within such hours and subject to such rules and regulations as may be determined by the trustees of said institute; and also that on the two days in each week during which said museum may remain closed to the general public it shall be open and accessible to students, schools, and societies organized for the purpose of promoting means and methods of safety and sanitation within such hours and subject to such rules and regulations as may be determined by the trustees of said museum.'' The public functions performed by the tenant are sufficiently established by its objects, stated in chapter 152, Laws of 1911, the authority to the city of New York to appropriate money for the corporate purposes, and the covenants in the lease requiring the premises to be accessible to the public. The argument of the plaintiff is based on his assumption that any use of the lands included in Central Park for purposes other than playgrounds or resting places, is illegal; in other words, that a park should consist solely of trees and grass. It is well established that park lands may be put to many uses without violation of law. The laws under which Central Park was acquired and amendatory acts thereto provided for the establishment and maintenance within the limits of the park of museums, zoological or other gardens, collections of natural history, observatories or works of art. Laws of 1859, chap. 349, and acts amendatory thereto. This provision has been carried into the Greater New York charter. Greater New York Charter, §§ 613, 621, 622. The decisions of the courts of this state have recognized that the establishment of a restaurant in a public park is a proper use of the park property. *Gushee* v. *City of New York,* 42 App. Div. 37; *Gredinger* v. *Higgins,* 139 id. 606. It has also been recognized that the use of park property for horticul-

tural gardens and for instruction and recreation of the public is a proper use. *International Garden Club, Inc., v. Hennessy,* 104 Misc. Rep. 141. The acts and decisions above referred to fully establish that educational features as well as provision for the health and comfort of the public are proper attributes of a public park. The city of New York has authority, under the charter, to establish the museum proposed to be maintained by the defendant Safety Institute of America, and to utilize the Arsenal building for that purpose, and this authority exists whether the title to Central Park is held by the city in its capacity as an agency of the state or as a private owner. What the city can do itself it can do through the legally constituted corporation created by the legislature for that purpose. *Gushee* v. *City, supra.* The complaint does not allege that the Arsenal is to be used for any purpose other than that expressed in the lease. Such a use is within the statutory provisions creating Central Park, and therefore the plaintiff's cause of action fails. The motion for judgment on the pleadings dismissing the complaint because it fails to state a cause of action is granted and the complaint dismissed.

Judgment accordingly.