WILLIAM H. WILLIAMS, Appellant, *v.* FRANCIS D. GALLATIN, as Commissioner of Parks of the City of New York for the Boroughs of Manhattan and Richmond, and Others, Respondents.

First Department, March 5, 1920.

**Municipal corporations — city of New York — use of building in Central Park by private corporation as free museum to exhibit safety and sanitary appliances — suit by taxpayer to annul agreement between city and private corporation permitting use of building.**

An agreement between the defendants, the city of New York and the Safety Institute of America, Inc., will not be annulled at the suit of a taxpayer and the defendants restrained from proceeding thereunder, where all that is provided for by said agreement is the improvement by the defendant institute of an old building standing in Central Park and its use by said defendant, after improvement, as a museum for the exhibition of safety and sanitary appliances for the education of the public, under a revocable license in which the interests of the city are minutely safeguarded and by which no open park space is invaded or encroached upon, and commercial exploitation and advertisement is prohibited.

Section 627 of the Greater New York charter, making it unlawful to grant, use or occupy any portion of Central Park for the purposes of a public fair or exhibition, is not applicable.

SMITH, J., dissents, with opinion.

APPEAL by the plaintiff, William H. Williams, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of August, 1919, granting defendants' motion for judgment on the pleadings, consisting of a complaint and answer, and also from a judgment entered in said clerk's office on the 13th day of August, 1919, dismissing the complaint.

*W. B. Roulstone* of counsel [*Gullie B. Goldin* with him on the brief], for the appellant.

*William J. Moran,* for the respondent, Safety Institute of America.

CLARKE, P. J.:

The plaintiff, a taxpayer, brings an action in equity against the commissioner of parks, the city and the Safety Institute

First Department, March, 1920.          [Vol. 191.

of America, Incorporated, to have an agreement in writing executed by said defendants annulled as illegal, null and void and to restrain the said defendants from acting under said agreement.

The defendant corporation was incorporated under the name of the "American Museum of Safety" by chapter 152 of the Laws of 1911. Its name was subsequently duly changed to the "Safety Institute of America." Section 2 of said law provides: " The objects of the corporation hereby created are to study and promote means and methods of safety and sanitation and the application thereof to any and all public or private occupations whatsoever, and of advancing knowledge of kindred subjects; and to that end to establish and maintain a museum, library and laboratories, and their branches wherein all matters, methods and means for improving the general condition of the people as to their safety and health may be studied, tested and promoted with a view to lessening the number of casualties and avoiding the causes of physical suffering and of premature death; and to disseminate the results of such study, researches and test by lectures, exhibitions and other publications."

Said defendant is recognized as an institution possessing a public interest and worthy of recognition and support by public funds.

Chapter 466 of the Laws of 1914 (adding to Greater N. Y. Charter [Laws of 1901, chap. 466], § 244-a) authorizes the board of estimate and apportionment of the city of New York to appropriate annually " such sum as it may deem proper, not exceeding fifty thousand dollars, for the keeping, preservation and exhibition of safety devices and means and methods of safety and sanitation in the building or any part thereof in the city of New York now or hereafter occupied by the American Museum of Safety, upon condition that the collection of safety devices and the means and methods of sanitation exhibited in said building occupied or to be occupied by the American Museum of Safety, shall be kept open and accessible to the public hereafter free of all charge throughout the year, five days in each week, one of which shall be Sunday afternoon, and also for two evenings in each week," etc.

Plaintiff brings this action as a taxpayer. His general

purpose is the entirely laudable one of preventing improper invasion and encroachment in and upon the Central Park. From time to time in the past many schemes have been devised which if successful would have resulted in encroachments more or less interfering with its basic purpose, viz., that of an open and beautiful park and playground for the general public. This court is in entire sympathy with the general public determination to preserve the park as a park and to prevent the diversion of any part thereof to other than park purposes.

What are appropriate park purposes must to a certain extent be left to the wisdom and discretion of those charged with its management. There are now within its area boats upon the lakes, swings and merry-go-rounds for children, ball grounds and tennis courts, conservatories, restaurants, music stands, statues, and the Metropolitan Museum of Art. Grouped around the Arsenal building at Sixty-fourth street and Fifth avenue, an old brick structure originally erected by the State as a State Arsenal, there is a menagerie of wild animals. Since title passed from the State to the city this building has been used for various purposes under the jurisdiction of the park department; it is in the park and has stood there for many years. All that is contemplated by the agreement attacked is to permit the defendant institute at its own expense, upon plans approved by the park department, to improve the said building and to exhibit therein under suitable regulations safety and sanitation devices for the education of the public in the matter of health and bodily safety. Commercial exploitation and advertisement is prohibited. Not a foot of open park space is taken or appropriated. An old building is to be renovated and improved and put to a useful public purpose under a revocable privilege, minutely guarding the interests of the city. Appellant cites section 627 of the Greater New York charter making it unlawful to grant, use or occupy for the purposes of a public fair or exhibition any portion of said Central Park. (See Laws of 1881, chap. 208; Consol. Act [Laws of 1882, chap. 410], § 692; Greater N. Y. Charter [Laws of 1897, chap. 378; Laws of 1901, chap. 466], § 627.) This section was passed for the purpose of preventing the location within the borders of the park of the World's Fair and was in response to the general public sentiment at the time

that such a use, with the buildings necessary to be erected for that purpose, would be entirely foreign to the purposes of the park and destroy its beauty and its usefulness. We do not think the provision applicable to the situation here presented.

We agree with the learned Special Term that the complaint does not state a cause of action. (108 Misc. Rep. 187.) We put our affirmance of the order appealed from upon the specific ground that all that is provided for in the written agreement sought to be declared null and void is the improvement of an old building now standing in the park and its use after improvement as a museum for the exhibition of safety and sanitary appliances for the education of the public under a revocable license in which the interests of the city are minutely safeguarded and by which no open park space is invaded or encroached upon.

The order and judgment appealed from should be affirmed, with costs to the respondents.

LAUGHLIN and MERRELL, JJ., concur; SMITH, J., dissents.

SMITH, J. (dissenting):

The facts are stated in the opinion of the presiding justice. I am not convinced, however, that the rights given to the Safety Institute by the instrument were legally given. In the opinion the rights given are called a revocable license. If it be meant revocable at will, I do not so read the paper. The rights given may be revoked by the city for non-compliance with the conditions imposed, or if the property shall be required for other park purposes. This does not give to the city the power to revoke at will, but after investment of $50,000 in the repair of the building the Safety Institute could require proof before a court or jury that the property *was required* for other park purposes before its rights were taken away.

Again the power of revocation given is incumbered by the moral obligation to permit for the ten-year period prescribed in the instrument the use of the building upon which the Safety Institute expends $50,000 for repair. So that *in practical effect* the instrument gives to the Safety Institute the use of this park building for ten years unless to meet some

very cogent demand for its use for park purposes or unless the Safety Institute fails to perform the conditions specified.

The opinion further says: " We put our affirmance of the order appealed from upon the specific ground that all that is provided for in the written agreement sought to be declared null and void is the improvement of an old building now standing in the park and its use after improvement as a museum for the exhibition of safety and sanitary appliances for the education of the public under a revocable license in which the interests of the city are minutely safeguarded and by which no open park space is invaded or encroached upon." The court then is not willing to hold that the exhibition by the Safety Institute is a park purpose or incidental thereto. If it were the city might authorize the erection of a new building therefor. That this purpose of the Safety Institute is not a park purpose seems clear. All definitions of parks involve the idea of open air exercise, entertainment and enjoyment. All buildings are excluded except such as are necessary or incidental to such open air use. It is far from accurate to say that the study of safety devices is in any way incidental to such use. It cannot give legality to this instrument that the purpose of the Safety Institute be educational or for the public good. Neither of these purposes authorizes the city to surrender to it any part of the public parks. Could you permit the use of this building for a public school? For a fire engine station? For a public hospital? I think clearly not. The city holds this land for a park and no other use thereof is permitted except by act of the Legislature. The Metropolitan Museum of Art with its enormous educational value occupies park space only through special legislative permission. (See Greater N. Y. Charter [Laws of 1901, chap. 466], § 621.)

The question is here squarely presented whether the city with legislative permission to use this land only for park purposes may permit the use of a building thereon, even temporarily, for any other purpose. No such express power is given. None I think is implied. If the city have such power why not to a corporation organized for private gain as well as for a public purpose? Must the corporation be educational or merely philanthropic? The limit of such power is nowhere defined and to hold that such power exists would present

innumerable questions as to the proper recipients thereof. Moreover, such a holding would be most dangerous, because of the possibilities of its misuse. The old Mount St. Vincent restaurant is upon park land. May its use, though temporary, be permitted to some other corporation with purposes foreign to park use upon like terms? The Claremont restaurant is upon park land. If that should be abandoned as a restaurant may its use be even temporarily permitted to still some other such corporation upon like terms? The harm to the city in the permission here given may be slight, but as a precedent the ruling is, I think, pregnant with mischief. If there be no need of. this building at present for park purposes it should either be destroyed or held until its use is sought for some purpose incidental to the park use. The park space in New York is already too spare. The courts should jealously guard even slight encroachments lest they be made precedents for greater encroachments hereafter.

In my judgment the order should be reversed and the injunction granted.

Judgment and order affirmed, with costs.