185 P.2d 998

**MOORE v. VALLEY GARDEN CENTER
et al.**

**No. 5002.**

Supreme Court of Arizona.

Nov. 3, 1947.

Fred V. Moore, of Phoenix, in pro. per.

Jack Choisser, City Atty., Theodore G. McKesson, Thomas P. Riordan, and Carl W. Divelbiss, all of Phoenix, for appellees.

UDALL, Justice.

The facts in this case are not in dispute. By two deeds (dated November 23, 1934, and January 12, 1935, both properly recorded in the office of the Maricopa County Recorder)

the City of Phoenix acquired property for park purposes which comprises a portion of the area now known as Encanto Park. About ten years later (December 12, 1946) the Parks, Playgrounds and Recreational Board of the City of Phoenix (a board of five members appointed by the Mayor and City Commissioners to control, regulate and develop the city's parks) leased eleven lots and a tract in this area for 99 years to the Valley Garden Center, a nonprofit corporation. By the terms of this lease the lessee was obligated to: (1) Pay rent of $1 per year; (2) erect a clubhouse and horticultural gardens on the premises at an approximate cost of $25,000; (3) make the gardens available to the Phoenix Public School System for the study of Botany; (4) promote and sponsor junior garden clubs; (5) maintain in the proposed building a horticultural library open to the public at fixed hours and supervised by a librarian employed by and under the control of the lessee; (6) turn the premises and improvements thereon back to the City of Phoenix at the expiration of the lease.

The lease was executed by the Chairman of the Parks, Playgrounds and Recreational Board of the City of Phoenix on the one hand and the President and Secretary of the Valley Garden Center on the other, and it was approved as to form by the City Attorney of Phoenix.

On February 28, 1947, the plaintiff-appellant Fred V. Moore, as a resident and taxpayer, filed his complaint in the Superior Court of Maricopa County contesting the validity of the lease through a declaratory judgment action. Defendants filed their answer and later a motion for summary judgment, which motion was granted after a hearing, and formal judgment was entered thereon. It is plaintiff's appeal from that judgment that constitutes the case at bar.

Plaintiff bases his appeal on three assignments: First, he contends that the lease is invalid for the reason that it fails to comply with Ch. IV, Sec. 2, subsec. 39 of the Charter of the City of Phoenix which provides that the City Commission shall have the power:

"(39) To provide for the lease of any land or buildings now or hereafter owned by the city; but all leases shall be made at public auction to the highest responsible bidder at the highest monthly rent, after publication of notice thereof for at least ten (10) days, stating explicitly the time and conditions of the proposed lease; provided, that the Commission may in its discretion reject any and all bids."

Specifically, in this regard, plaintiff points to the admitted fact that there was no notice given, no public auction, and that therefore the lease was not awarded to the highest responsible bidder.

Second, plaintiff maintains the lease was executed in violation of Ch. XXIII (misprinted as Ch. XXII in the 1939 Munic-

ipal Code of the City of Phoenix), Sec. 2, subsec. 3 of the Charter of the City of Phoenix which, in providing for a Parks, Playground and Recreactional Board and designating its powers and duties states that it may: " * * * purchase real estate for park, playground or recreational purposes, and * * * sell or lease same if and when it be deemed no longer necessary for park, playground or recreational purposes." As to this assignment, plaintiff points out that no finding was made to the effect that the leased property was no longer necessary for park, playground or recreational purposes.

Third, plaintiff assigns as error the fact that the lease was to a private corporation for private purposes which he contends is contrary to Ch. XXIII, Sec. 2, subsec. 7 of the Charter which allows the Parks, Playgrounds and Recreational Board:

"To make and enter any contracts with others, for the lease or use of buildings or tracts of land for recreational purposes."

■ There can be no question of the fact that the Charter is controlling in this case over any inconsistent or contradictory law relating to cities containing a population of more than 3500 inhabitants so long as it is not in conflict with the State or Federal Constitutions. Sec. 16-303, A.C.A.1939; Gardenhire v. State, 26 Ariz. 14, 221 P. 228. Nor is there any disagreement over the fact that the Charter can be amended, Sec. 2, Art. 13, Constitution of the State of Arizona; and that it was amended by proper processes to provide for a Parks, Playgrounds and Recreational Board. Ch. XXIII of the Charter of the City of Phoenix.

■ Likewise it is a well settled law of construction of constitutions, statutes, charters, and similar instruments that the courts must, if consonant with reason, interpret such instruments in a manner such as will give effect to each and every provision thereof. Amish v. City of Phoenix, 36 Ariz. 21, 282 P. 42.

■ Defendants appear to rely upon a secondary rule of statutory construction to the effect that when two provisions in such an instrument are in conflict or are inconsistent with each other, the one most recent in point of time shall control, citing: City and County of Denver v. New York Trust Co., 229 U.S. 123, 33 S.Ct. 657, 57 L.Ed. 1101, and the last paragraph of Subsec. 5, Sec. 3, Ch. XXIII of the Charter which states:

"Insofar as the provisions of this amendment are in conflict with any other part of the Charter of the City of Phoenix, this amendment shall govern."

While we certainly have no quarrel with this rule of law as a general proposition, we believe that there exists here no inconsistency or contradiction which calls for

its use. Concretely, as applied to the Charter of the City of Phoenix it does not seem unreasonable that when the City Commission leases city property generally, it must give notice, have a public auction and lease to the highest responsible bidder, but that when the Park board leases park property for recreational purposes, it shall not be so bound. The goal of the leasing activities of each of these bodies is entirely different. In one case it is to raise the largest possible amount of revenue for the City Treasury, while in the other the prime consideration should be, and is to secure the greatest possible improvement and development of the parks for the recreation and convenience of the residents of Phoenix. The Charter has recognized this necessary distinction in Ch. XXIII, Sec. 2, Subsec. 7, quoted supra, which instead of contradicting the provisions of Ch. IV, Sec. 2, Subsec. 39, quoted supra, seems intelligently to supplement it. For this reason we find no merit to plaintiff's first assignment to the effect that the lease was invalid because it was not executed under the formalities of notice, etc., required by Ch. IV, Sec. 2, Subsec. 39 of the Charter.

Plaintiff's second and third assignments should properly be considered together. It is strongly contended by him that the Valley Garden Club does not qualify as a recreational activity, and, more particularly that it is not for the benefit of the general public as the Garden Club lease specifically provides for the admission to its gardens of members of the Public School System (though certainly no provision excludes all other members of the general public), and provides that the library shall be in charge of a librarian supervised by the Club and open to the public at fixed hours. Plaintiff reads into these lease provisions the implications that all members of the general public other than those in the Public School System might be excluded from the gardens, and that the library might well arrange its hours so that use thereof by the general public might be highly limited. This argument falls by its own weight. Not only is that far afield from a necessary or sensible construction of the lease, but nothing exists in the record to show this to be consonant with the intent and purpose of the Garden Club. Instead such fears are contra to both reason and law. As for the Club itself, its success and growth depend upon the interest it can generate among, and the contribution it can make to, the members of the public. In the reported cases there has been such a multiplicity of decisions holding that public libraries, art museums, natural history museums, children's playgrounds, conservatories, veterans' memorial halls and buildings, restaurants, zoological and botanical gardens, pioneers' memorial halls, historical societies, baseball parks, swimming pools, golf courses and countless others constitute a recreational use of land for park purposes that whether the Garden Club

represents such a use cannot be seriously questioned. Spires v. City of Los Angeles, 150 Cal. 64, 87 P. 1026, 11 Ann.Cas. 465; Slavich v. Hamilton, 201 Cal. 299, 257 P. 60; Vale v. City of San Bernardino, 109 Cal. App. 102, 292 P. 689; City of Wichita v. Clapp, 125 Kan. 100, 263 P. 12, 63 A.L.R. 478; Bryant v. Logan, 56 W.Va. 141, 49 S. E. 21, 3 Ann.Cas. 1011; International Garden Club, Inc., v. Hennessy, 104 Misc. 141, 172 N.Y.S. 8; Williams v. Gallatin, 229 N. Y. 248, 128 N.E. 121, 18 A.L.R. 1238.

For the above reasons we find that the lease comes well within the scope of Ch. XXIII, Sec. 2, Subsec. 7, providing that the Park Board may lease property for recreational purposes. This makes unnecessary a consideration of plaintiff's second assignment concerning the requirements the Park Board must fulfill when leasing park property for non-recreational purposes.

At a later time a question might arise as to whether a lease by the Park Board of property for revenue purposes under the section of the Charter cited immediately above would require notice, bids at auction, etc., but such problem is not now before us and any opinion thereon would be both un- necessary and dicta.

Judgment affirmed.

STANFORD, C. J., and La PRADE, J., concur.