88 So.2d 148 (1956)
Alice RANEY et al., Appellants,
v.
CITY OF LAKELAND and Garden Club of Lakeland, Inc., Appellees.
Supreme Court of Florida, Special Division A.
June 8, 1956.
*149 Raymond C. Smith, Lakeland, for appellants.
J.C. Rogers, Lakeland, for City of Lakeland.
Bentley & Shafer, Lakeland, for Garden Club of Lakeland, Inc.
THORNAL, Justice.
Appellants Raney et al., who were plaintiffs below, seek reversal of a summary final decree denying an injunction and sustaining the validity of a 99-year lease of publicly-owned land by a municipality to a non-profit corporation, appellee Garden Club of Lakeland, Inc.
The question for determination is the validity of a long term lease of publicly-owned land by a municipal corporation to a non-profit corporation for purposes revealed by the record and subject to the restrictions hereinafter set forth.
In 1952, at a cost of $12,500 the City of Lakeland acquired the vacant land in question. The land is located in the vicinity of the Civic Center in downtown Lakeland and the record suggests that it was originally contemplated that the property would be used for off-street parking of motor vehicles, although this was not a restriction in the deed of acquisition. It was never so used to any extent.
On September 28, 1954, the city, as lessor, executed in favor of certain individuals, as trustees of the Garden Club of Lakeland, Inc., a 99-year lease covering the land at an annual rental of $1 and other considerations. Among other things the lease provided that the lessee would not permit any use of the land for any purpose "of industry or commerce for private gain but shall use said premises only in furtherance of the general objects of the Garden Club of Lakeland, Inc.", as provided in the publicly-recorded charter of the non-profit corporation. The lease further provided that the lessee would establish and maintain upon the premises a public library dealing with the growing and propagation of flowers, ornamental shrubbery, plants and lawn grasses and allied subjects, that the lessee would maintain upon the premises a service for dissemination of educational information in the field of horticultural beautification and that such library and service "shall be available to the lessor and to citizens of Lakeland, Florida as a public service". Lessee agreed to construct a suitable building to house the library and offices, to provide an auditorium, club rooms and exhibition facilities. The building was to be started within two years at the expense of the lessee. There were the usual clauses for protecting the lessor with public liability insurance, covenants against assignment and subletting and cancellation on thirty days notice upon breach of any covenant. The improvements revert to the city with the land at the end of the term.
The execution of the lease was objected to by certain groups alleging themselves to be citizens and taxpayers of the City of *150 Lakeland as well as others who were members of the Winter Tourist Club and Shuffleboard Club. The complaining groups appeared to be those who customarily used the Winter Tourist Club facilities at the Civic Center for such activities as lawn bowling, shuffleboard playing and other winter visitor entertainments and diversions typical to such groups all over Florida. The complaint is grounded on the alleged lack of authority of a municipal corporation to lease public property "for private purposes" and in addition, the plaintiffs alleged that the land was originally acquired as an off-street motor vehicle parking facility, that Lakeland needs such facilities, especially in the vicinity of the Civic Center, and that the lease to the Garden Club is an illegal diversion of public property to a purpose other than that for which it was allegedly acquired.
Upon the filing of an answer by the city, the parties agreed that the sole question was the validity of the lease, and on motion for summary judgment, the Chancellor, with a very thorough and lucid opinion, decreed that the lease was valid and that the complaint should be dismissed. Reversal of this decree is sought by this appeal.
Appellants contend here, as they did in the trial court, that the execution of this lease is prohibited by Section 10 of Article IX of the Florida Constitution, F.S.A., as well as by the general principle that under the circumstances outlined, public property cannot be diverted to "private purposes".
Appellees contend that the Garden Club of Lakeland, Inc., is a non-profit quasi public corporation, that the execution of this lease is in fulfillment of a public municipal function of the City of Lakeland, and that the lease does not constitute the employment of public funds or the pledging of public credit for private purposes.
The decree of the Chancellor must be affirmed.
The applicable portion of Section 10, Article IX of the Florida Constitution reads:
"* * * The Legislature shall not authorize any county, city, borough, township or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual."
Section 8, Chapter 10754, Special Acts of Florida, 1925, the same being the charter of the City of Lakeland, provides in part:
That it "may hold real estate * * * and dispose of the same for the benefit of the city * * * and may sell, lease or dispose of said property for the benefit of the city to the same extent that natural persons might do; * * *."
The validity of the acts of municipal officials must be tested by applicable constitutional provisions as well as the expressed or necessarily implied authorizations of the city charter.
The lease involved recited that the city had no present or anticipated need for the land for governmental purposes and that it was executed to permit the enlargement of the program and facilities of the Garden Club for the furtherance of its work in behalf of the general welfare. Admitting the existence of the power, such decisions of municipal officials will not be disturbed absent a showing of fraud, bad faith or abuse of discretion. None is shown here. In this connection the Garden Club agreed to construct an appropriate building at its own expense. It agreed to establish and maintain a public library dealing with the growing and propagation of flowers, ornamental shrubbery, plants and allied subjects. It agreed to maintain a service for the dissemination of educational information in the field of horticultural beautification for the benefit of the public generally. Construction of the building was required to begin within a reasonable time and the city retained the right to cancel in the event of a breach of any of the covenants.
*151 There can be no doubt that the beautification of a modern city by extensive and well-conceived planting of trees, flowers and shrubs is a proper function of municipal government. This observation is particularly appropriate to Florida, a state which by its very name preserves for history the natural beauty of the Easter Sunday (Pascua Florida) in 1513 when Ponce de Leon came upon our shores in quest of the fabulous Fountain of Youth. There is hardly a city of any size in Florida that does not maintain a well-staffed park department as a part of the public service. This is as it should be. Flowers, shrubs and trees are the "cosmetics" of the modern city. They perfume the atmosphere. They add color, charm and personality to the face of the community. They cover the wrinkles and conceal the blemishes. If Florida is the land of beauty that visitors and residents alike acclaim it to be, it is because of the activities of groups such as garden clubs and the beautification programs of progressive cities which have supplemented the indigenous flora and foliage with planned beautification programs, and with projects to replace the trees and shrubs which oftentimes have necessarily fallen before the march of progress. Such, therefore, is the nature of the public function involved. See Section 339.24, Florida Statutes, F.S.A.
The lessee, Garden Club of Lakeland, Inc., is not a private corporation for profit. If it were, this lease could not stand. On the other hand, it is quasi public in nature. By this lease it obligates itself to render a public service unlimited and unrestricted to its own membership. The lease is circumscribed by restrictions that preclude the exploitation of the land and contemplated improvements for private gain. There could be little question that by a substantial additional expenditure of public funds the city could carry on the program which the Garden Club undertakes to effectuate without additional demands on the public treasury. Although the briefs refer us to cases in other states, we think it unnecessary to delve beyond our own precedents which in principle give adequate support to the final decree of the Chancellor.
In Bailey v. City of Tampa, 92 Fla. 1030, 111 So. 119, we held that under a provision in the charter of the City of Tampa similar to the Lakeland charter quoted above, that city had the power, consistent with the provisions of Section 10, Article IX of our Constitution, to convey a parcel of land to the Tampa Board of Trade which agreed to build a building without expense to the City of Tampa. The building was to be financed by borrowing money against a mortgage thereon which would be liquidated within 35 years, after which the building would be turned over to the city subject to the continued use of such part thereof as would be needed by the Board of Trade. We call on the historical knowledge of Mr. Justice Terrell who wrote for this court in Bailey v. City of Tampa, supra, that the reason for the constitutional provision under consideration was to forbid municipal governments to engage directly or indirectly in private commercial ventures for profit and to restrict them to participating only in public services and governmental activities. It was there pointed out that the constitutional provision was occasioned, in the early days of our State, by the practice of cities and counties in becoming stockholders or bondholders in railroads, banks and other commercial enterprises which in the event of poor management and ultimate failure would burden the public with the responsibility of liquidating their indebtedness.
In the case last cited there was no suggestion that the municipality become a stockholder in the quasi public corporation or that it obtain or appropriate money for it or lend to it or any other association the public credit. Similarly, we find no such obligation imposed upon the City of Lakeland in the matter before us. Undoubtedly, Bailey v. City of Tampa, supra, was a pilot authority for the growth and development of the Chambers of Commerce that have contributed so extensively to the economic, social and cultural advancement of Florida, both at the state and local level. In that instance the City of Tampa was employing *152 the facilities of a quasi public non-profit corporation to cooperate in the performance of a worthwhile and proper function of municipal government.
Possibly an even stronger precedent in support of the decree below was our decision in State v. City of Miami, Fla. 1954, 72 So.2d 655. There it was held that the City of Miami could actually issue $100,000 of warehouse revenue certificates for the purpose of constructing a warehouse which would be leased to a non-profit organization known as the "Orange Bowl Committee" for the purpose of storing floats, material and equipment necessary for the annual Orange Bowl Festival and Pageant, which has become a national attraction of inestimable economic value to the entire state. An observation of this court in that case is in substantial measure appropriate to the matter before us. We quote from 72 So.2d at page 656 of the opinion:
"In the instant case, there is no use by the city of its authority `for private gain by a private corporation.' As noted above, the Committee is a non-profit organization whose members derive no pecuniary gain whatsoever from their activities, although we have no doubt that the personal satisfactions and spiritual values which accrue from their unselfish devotion to this public service are far more rewarding to them than would be any monetary compensation."
The issuance of the warehouse revenue certificates for the stated purpose was held to be well outside of the prohibitions of Section 10, Article IX of the Florida Constitution.
We wish to clothe this opinion with the protective observation that it is not to be construed as carte blanche authority to municipal corporations to exploit publicly owned land or extend the favor of the public funds and credit directly or indirectly to promotional schemes or devices aimed immediately or ultimately at lining the pockets of private business or individuals. When such situations appear this court would undoubtedly adhere to its pronouncements in State v. Town of North Miami, Fla. 1952, 59 So.2d 779. We think that the same rule would apply to a project designed purely for the private benefit of the individual members of a quasi-public or eleemosynary association or corporation. Certainly such is not the situation now before us. On the contrary, we find a useful public purpose being served by the municipal government in cooperation with progressive citizens at no profit to the latter except the satisfaction of improving the community as a place in which to live. See also Sunny Isles Fishing Pier v. Dade County, Fla. 1955, 79 So.2d 667.
We find support for our conclusion in the decisions of courts of other states. See International Garden Club, Inc., v. Hennessy, 104 Misc. 141, 172 N.Y.S. 8, cited with approval in Bailey v. City of Tampa, supra. See also Moore v. Valley Garden Center, 66 Ariz. 209, 185 P.2d 998; Blaser v. Dalles City, Or., 137 P.2d 991, and a helpful annotation in City of Clovis v. Southwestern Public Service Co., 49 N.M. 270, 161 P.2d 878, 161 A.L.R. 504, at page 520.
The parties are commended for their helpful briefs and the Chancellor for his well-considered decree.
Finding no error, the decree appealed from is 
Affirmed.
DREW, C.J., TERRELL, J., and CARROLL, Associate Justice, concur.