QUESTIONS:
1. May a county contract with and pay funds to a mental health board to provide mental health services within the district?
2. Under part IV of Ch. 394, F. S., may a county appropriate and pay county funds in a lump sum to a mental health board to fund mental health services under the jurisdiction of the board of county commissioners?
SUMMARY:
Under s. 394.76(9), F. S. 1977, a county is required to participate in the funding of mental health services under its jurisdiction. The county may fund these services as required by s.394.76(9) through the medium of a district mental health board, a nonprofit quasi-public corporation, without destroying the public nature or objective of the expenditure of county funds. Furthermore, the county is authorized to contract with the district boards to provide for and be provided with these services. The county commission is not, however, authorized by law to appropriate and pay funds to the mental health board in lump sum to fund the county's proportionate share. The duties and function of the clerk of the circuit court as county auditor must be preserved, and some control over the disbursement of county funds must be retained by the board of county commissioners in any contract between the district board and county in order to insure that public funds are properly expended.
AS TO QUESTION 1:
According to your inquiries, the board of county commissioners of one of the sixteen counties served by the District III Mental Health Board has refused to release funds for mental health services through the district board since it considers such payments to be a `lump sum' payment contrary to existing constitutional and statutory preauditing requirements. In addition, the county is advised that it should not contract with, or provide funds to, a `private, nonprofit corporation'; therefore, the county is reluctant to approve the District Mental Health Plan prepared by the District III Mental Health Board, a nonprofit corporation.
The Community Mental Health Act, part IV, Ch. 394, F. S., establishes a system of locally administered and controlled community mental health services under the supervision of the Department of Health and Rehabilitative Services. Section 394.68. The community mental health programs established under this chapter are to be integrated with state operated programs to provide a unified mental health system within the state. Section394.66(3) and (8). The district mental health boards have been established to provide coordinated mental health services within the department's service districts or subdistricts as defined in s. 20.19, F. S., see ss. 394.67(1), (10), and (11) and 394.69, and serve as a direct link between the department and community programs. Cf. Rule 10E-4.09(2)(a), F.A.C. Members of the boards are appointed by the governing bodies of those counties having jurisdiction in the board district, ss. 394.67(2) and 394.70, F. S., and each board must be duly incorporated within the state as a nonprofit corporation. Section 1 of Ch. 77-372, Laws of Florida (s. 394.69[5], F. S. 1977). Each board is charged with the responsibility of preparing a district mental health plan which reflects the program priorities established by the department and the needs of the district. This plan is to be submitted to the district administrator and to the governing bodies of the counties for review, comment, and approval. See s. 394.75.
Financing of mental health services is based upon a uniform ratio of the state government responsibility and local participation. Section 394.66, F. S. The state's share of financial participation is 75 percent of the total operating costs of services and programs specified in s. 394.75(3), F. S., less nonreimbursable expenditures as provided in s. 394.76(7), F. S., federal grants excluding funds earned under Title XX of the Social Security Act,42 U.S.C.A. s. 1397, and inpatient and third-party payments for services rendered to individual eligible inpatients for which reimbursement has been requested from the state. Section394.76(4), F. S., as amended by s. 33 of Ch. 77-312, Laws of Florida. The expenditures of 100 percent of all third-party payments and fees for noninpatient services are also eligible for state financial participation if such expenditures are in accordance with s. 394.76(7). Section 394.76(4)(d).
Counties are required to participate in the funding of mental health services under their jurisdiction. Section 394.76(9), F. S. 1977, specifically provides:
 State funds for community mental health services shall be matched by local funds on a three to one basis respectively. Governing bodies within a district or subdistrict shall be required to participate in the funding of mental health services under the jurisdiction of said governing body. The amount of the participation shall be at least that amount which, when added to other available local matching funds, is necessary to match state funds.
`Governing bodies' means `the chief legislative body of a county, a board of county commissioners or boards of county commissioners acting jointly, or their counterparts in a charter government.' Section 394.67(2), F. S. (1976 Supp.) A municipality contributing funds may be added into the local funds making up the three-to-one basis set forth in s. 394.76(9), thereby decreasing the required amount of a county's participation in the funding of mental health services.
Your first inquiry is directed as to whether the county may participate in providing and funding mental health services within its jurisdiction as required by s. 394.76(9), F. S., through the medium of a district mental health board, a nonprofit corporation. Section 10, Art. VII, State Const., prohibits the state or a county, municipality, special district, or any agency thereof from lending or using its leasing power or credit to aid any private corporation, association, partnership or person. The purpose of this provision is `to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most incidentally benefits.' Bannon v. Port of Palm Beach District, 246 So.2d 737, 741 (Fla. 1971); cf. State v. Town of North Miami, 59 So.2d 779 (Fla. 1952); Baily v. City of Tampa, 111 So. 119 (Fla. 1926). However, when a public purpose is involved, the courts have recognized that a county may accomplish this purpose through the medium of a nonprofit quasi-public corporation. See, generally, Burton v. Dade County, 166 So.2d 445
(Fla. 1964); cf. Raney v. City of Lakeland, 88 So.2d 148 (Fla. 1956). Thus, the applicability of the constitutional prohibitions contained in s. 10, Art. VII, are dependent in part on whether a valid public purpose is involved. The determination of what constitutes a valid public purpose for the expenditure of public funds is, at least initially, a determination for the Legislature.Cf. Watson v. Larson, 33 So.2d 155 (Fla. 1947), cert. denied,333 U.S. 862 (1948). With respect to the establishment of mental health programs within this state, the Legislature has considered those services to be a proper subject for the expenditure of public funds. See also s. 125.01(1)(e), F. S., which authorizes counties to provide and operate health and welfare programs. If the purpose to be achieved constitutes a valid public purpose, then the means to be applied to obtain such a purpose is largely within the discretion of the Legislature, see, generally, 81A C.J.S. States s. 205(b), p. 729. Cf. Florida Power Corporation v. Pinellas Utility Board, 40 So.2d 350 (Fla. 1949). The Florida Supreme Court, discussing public or quasi-public corporations, has stated:
 Their business ordinarily is stipulated by the Legislature to fill a public need without private profit to any organizers or stockholders. Their function is to promote the public welfare and often they implement governmental regulations within the state's police power. In a word, they are organized for the benefit of the public. [O'Malley v. Florida Insurance Guaranty Association, 257 So.2d 9 (Fla. 1971).]
See also Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 82 So. 346 (Fla. 1919), in which the Florida Supreme Court discussed the distinction between private, quasi-public, and public corporations and public quasi-corporations. District mental health boards, organized under Ch. 394, F. S., and incorporated as nonprofit corporations under Ch. 617, F. S., see s. 394.69(5), F. S. 1977, appear to qualify as quasi-public organizations; they are nonprofit, their services are available to the general public within the board district, and they serve a valid public purpose — mental health. Cf. AGO 073-40. The fact that a county under its home rule powers utilizes the services of a nonprofit organization to handle the operating details of mental health facilities or programs does not destroy the public nature or objective of the expenditure made for that specific county purpose. Cf. AGO 073-40 and cases cited therein.
On the basis of the foregoing authorities, it appears that a county can utilize a private nonprofit corporation to carry out public purposes. Therefore, county participation in mental health programs through the medium of the district mental health boards is not violative of s. 10, Art. VII, of the Florida Constitution.
Moreover, s. 394.73(1), F. S., provides that any county within the board district may contract for mental health services with the same authority as does the Department of Health and Rehabilitative Services. Since under s. 394.457, F. S., the department is authorized to contract with district boards to provide for, and be provided with, mental health services and facilities, it appears that a county, possessing the same authority as the department in this respect under s. 394.73(1), may also contract with the district boards to provide for these services. See also s.394.73(2), (3), and (4), F. S., which provides that counties within a board district may enter into agreements with each other for the establishment of joint mental health programs and, in certain circumstances, may withdraw from such programs. However, under s. 394.76(9), F. S., the county is required to participate in the funding of these programs, and the foregoing statutory requirements of county participation may not be frustrated by a county's refusal to contract or to include in its budget funds for these services to the extent mandated by the statute.
AS TO QUESTION 2:
As discussed in question 1, a county must participate in the funding of mental health services. The county's required participation in the funding of these mental health services may be accomplished through the medium of a district mental health board. However, neither the County Mental Health Act nor the rules promulgated by the Department of Health and Rehabilitative Services established guidelines as to the manner and procedure to be followed in budgeting, appropriating, and disbursing the county's respective proportionate share of the funding of mental health services under the county's jurisdiction. The Community Mental Health Act requires the district mental health board to prepare a budget and to `receive and disburse such funds as are entrusted to it by law or otherwise, including funds from both private and public sources . . . .' Section 394.71(2), F. S. The total operating budget of a single board within a service district is limited to $200,000; if there are two or more boards within a district, the budget may be no greater than $225,000. Section 394.69(4), F. S. 1977. All funds received by the board must be disbursed in accordance with the district mental health plan approved by the counties and department and an annual report submitted containing, inter alia, a fiscal accounting. See ss.394.75 and 394.71(4), F. S. However, the manner in which local funds, both public and private, are to be received, should be determined jointly by the appropriate district boards, service providers and various funding sources within the board district.See Rule 10E-4.09(3)(a) F.A.C.; AGO 076-153.
This office has consistently recognized that, in accordance with constitutional and statutory requirements, the clerk of the circuit court as county auditor has a duty to audit and approve the disbursement of county funds. See s. 1(d), Art. VIII, State Const., s. 129.09, F. S.; cf. AGO's 056-151 and 059-92. While a public purpose may be accomplished through a nongovernmental entity such as a nonprofit corporation, `[t]here must be some control retained by the public authority to avoid frustration of the public purpose.' O'Neill v. Burns, 198 So.2d 1, 4 (Fla. 1967). Therefore, in the absence of constitutional or statutory authority, county funds may not be turned over in a lump sum to a noncounty agency or corporation to be expended by that organization in its discretion and not by county warrant. See,e.g., AGO 059-92 in which this office determined that, although a county could arrange with a state or county welfare board to administer a welfare program within the county, it could not turn over its funds to a governmental agency without preserving the preaudit function of the clerk of the circuit court as county auditor. A county could not make a lump-sum payment to a governmental agency without express statutory or constitutional authority. Accord: Attorney General Opinion 064-96. Similarly, a county may not turn over its funds in lump sum to a nonprofit quasi-public corporation. In an informal opinion to Bruce Jones, County Attorney for Palm Beach County, dated January 22, 1968, this office advised that lump-sum contributions by county commissions to other agencies were not authorized. The statute upon which that opinion was based was substantially amended to expressly provide that the county could transfer money budgeted for the Palm Beach County Industrial Development Board to the board at the beginning of each fiscal year or in equal monthly payments. See informal advisory opinion to George H. Bailey, County Attorney for Palm Beach County, dated October 15, 1969. Seealso s. 160.01, F. S., which expressly authorizes lump-sum payments of county or municipal funds to regional planning councils. Section 160.01 was amended in 1969 by Ch. 69-63, Laws of Florida, to expressly authorize such payments.
It is clear, therefore, that under the present language of part IV, Ch. 394, F. S., and in particular, s. 394.76, a county is not authorized to make lump-sum payments to a district mental health board. Thus, since the county is required to budget and fund mental health services under its jurisdiction, an alternative method of payment must be agreed upon by the county and district mental health board. The clerk of the circuit court as county auditor may audit and approve claims for mental health services on an item-by-item basis, paying such claims by county warrant upon submission of a proper voucher. The county's contract with the district board may provide an alternative method of payment; however, any contract with the district board to provide these services must preserve the preauditing function of the clerk as county auditor. For example, the district board may set up a revolving fund which would be reimbursed by the county only after proper vouchers for the disbursement of such fund were audited by the clerk as county auditor and approved by the board of county commissioners. Cf. AGO 059-92. I would also refer you to the method set forth in s. 394.76(6), F. S. (1976 Supp.), for state reimbursement which is presently being implemented. I am advised by the Department of Health and Rehabilitative Services that under the `purchase of service approach,' the state in effect purchases mental health services for which the respective boards are compensated. See also informal advisory opinion to Harry A. Johnson, II, Attorney for the Clerk of the Circuit Court of Palm Beach County, dated November 22, 1971, supplemented by letter to John B. Dunkle, Clerk of the Circuit Court of Palm Beach County, dated December 16, 1971, in which this office concluded that monthly payments to a community mental health center based upon an agreement limiting the county's share to an agreed-upon percentage of the center's operating and capital expenses and requiring monthly requisitions to be accompanied by a certified copy of the previous month's list of payroll warrants and warrants for operating expenses were not unauthorized `lump-sum' payments. Such payments could be made by the county after a review by the clerk, as county auditor, of such certified copy of the previous month's list of warrants submitted to him with the monthly requisitions.
Accordingly, the county must participate in the funding of these mental health services to the extent specified in s. 394.76(9), F. S. 1977, and is therefore required to contract and include the required funding in the county's annual budget. Some control over the disbursement of these funds, however, must be retained by the board of county commissioners, see O'Neill, supra, and the duties and function of the clerk of the circuit court as county auditor must be preserved. Therefore, the county, in funding mental health services as required by s. 394.76(9), F. S. 1977, may provide by contract with the district mental health board for the disbursement of county funds. For example, the county may warrant claims submitted by voucher on an item-by-item basis, or the district board may establish a revolving fund which will be reimbursed by the county after the clerk properly audits and approves claims. However, any contract with the board for disbursement of county funds must insure that the payments are subject to proper disbursement controls and accounting procedures.
Prepared by: Joslyn Wilson Assistant Attorney General