THOMAS, Justice.
A writ of certiorari was issued in this cause because of a prima facie showing that an opinion of the District Court of Appeal, Second District, was in conflict with decisions of this court on the same point of law.
In order to make clear the situation with which we are dealing we will first give a history of the litigation and of the experience of the circuit court, this court, and the District Court of Appeal with it.
Suit was instituted in the circuit court of Broward County by Hollywood, Inc., to effect the invalidation of a transaction, by which the county secured certain lands in return for evidence of indebtedness, that was charged by the plaintiff to have been violative of the safeguards and prerequisites of Sec. 6, Art. IX of the Constitution, F.S.A. The circuit judge dismissed the cause and the matter came to this court on' appeal from his order. From the opinion of this court may be ascertained in detail the nature of the indebtedness assumed by the county. Hollywood, Inc., v. Broward County, Fla., 90 So.2d 47. Briefly, the county agreed to pay $160,000 in cash and to discharge a mortgage for the balance *753 of $1,440,000. It seems unnecessary to go into the ramifications by which the sale was accomplished because we are immediately concerned with only that part of the factual- background which indicates that no election was initially held according to the specifications in Sec. 6, Art. IX, supra, to decide the question whether or not the county would be authorized to assume the indebtedness. The court, in the cited opinion, very appropriately remarked that there was no concern for the propriety of the purchase but only with the method chosen to pay for the property. It was concluded that the order dismissing the complaint was error for the reason that the allegations of the pleading presented a case for rescission “unless and until” [90 So.2d 52] the plan for deferred payments had been approved under the .provisions of Sec. 6 of Art. IX, supra.
And so, back to the circuit court went the cause for further proceedings. This was in November 1956.
Meanwhile, in September 1956, the County Commissioners ordered that the matter be submitted to the qualified electors who were freeholders and the proposal was not validated because a sufficient number of those qualified to vote failed to participate in the election. Then the registration list was revised, Sec. 97.081 (2), Florida Statutes 1955, F.S.A. Afterward, 25 June 1957, the proposal was again submitted to the qualified electors who were freeholders and this time it was approved by a substantial majority of those who cast ballots, and they constituted a majority of persons qualified to participate.
The present petitioner had applied to the Supreme Court for a writ of certiorari to review the order of the circuit court, 8 April 1957, denying its. motion for a summary decree and the petition was denied without prejudice to assert after determination of the cause any matters presented in the petition. Hollywood, Inc. v. Broward County, Inc., Fla., 101 So.2d 148. When the motion for summary final decree was presented, the petitioner took the position not only that the indebtedness was invalid for lack of approval but that it could not be validated retroactively.
Later, 26 September 1957, when dissolving the injunction that had been entered to prevent action under the challenged arrangement for incurring the indebtedness, the circuit court held, in effect, that the election the Supreme Court had determined to be indispensable to validate the indebtedness had been held and that petitioner, therefore, was not entitled to the relief it sought.
In the interim the amendment of Article V of the Constitution had gone into effect, 1 July 1957, and an appeal was taken to the District Court of Appeal, Second District. As we said in the beginning, the decision rendered is the basis of the petition for certiorari now under consideration.
Before digesting the opinion of the District Court of Appeal we think it is well to extend the quotation already given from the language of the Supreme Court in Hollywood, Inc., v. Broward County, supra, that the complaint, originally dismissed by the circuit court, stated grounds for relief “tmless and until the present deferred payment plan has been approved under the provisions of Section 6 of Article IX, of the Constitution, or unless some other payment plan is arranged, and approved under the Constitution.” (Italics supplied.)
A careful reexamination of this conclusion brings the conviction that it was not the thought of the court to hold the plan irretrievably invalid, or to require a new one, but to say that it could be revitalized when approved by a' majority vote at an election in which the requisite number of qualified persons took part, or, to state it otherwise that the plan would be invalid up to such time, in the future. The significance of this view will be plain as we discuss the basic point which, after all, is the harmony, or lack of it, between the decision of the District Court of Appeal *754 and those decisions of this court on the relationship between the time of the election contemplated by Sec. 6 of Art. IX, supra, and the date proposed “bonds” are issued.
The word “bonds” is used in the Constitution but it is plain from the history of the litigation in the circuit court, and this court, that the indebtedness was the controlling factor and that it, though evidenced by mortgage notes, was of such nature that it could not be valid without approval of the electorate regardless of its form. In other words, it was not the holding that no such plan could be valid but only that it lacked validity because of the absence of the approving vote.
Authority to incur the indebtedness inhered in the people qualified to vote in the sort of election delineated in Sec. 6, Art. IX of the Constitution, and we think the only logical interpretation of the opinion reached in the former appearances of the case here is that although the power was not exercised antecedent to the assumption of the debt, it may be exercised in ratification of it. It will have been noted that the court did not hold that the plan was beyond revival and this seems emphasized by the alternative provisions for approval or arrangement for “some other payment plan.” Had the plan itself, to evidence the debt by notes and secure it by mortgage, been rejected, or approval by postelection been disallowed there would have been no occasion for the language used. Fairly construed it meant that the plan should be put in abeyance pending ratification. Such was the purport of the prepositions “unless” and “until.”
We revert now to the pivotal question whether or not the decision of the District Court of Appeal conflicted with other decisions of this court on the same point of law.
To begin, we are reminded of the express language of Sec. 6, Art. IX, that counties have the power to issue bonds “only after” approval by the qualified electorate; that, under Sec. 130.03, Florida Statutes, F.S.A., bonds may be issued “only after” such sanction; that in Sullivan v. City of Tampa, 101 Fla. 298, 134 So. 211, we said it was the purpose of the constitutional provisions to prevent the issuance of bonds without “first” obtaining the approval; that in Leon County v. State, 122 Fla. 505, 165 So. 666, we said the inhibition was meant to prevent the assumption of any form of obligation “unless” it was “first” endorsed; and that in State v. County of Manatee, Fla., 93 So.2d 381, and Welker v. State, Fla., 93 So.2d 591, we referred to the election as a “condition precedent” to validity of the bonds.
The citations chosen by the petitioner do not place more emphasis on the words we have quoted than they deserve, but to accept the position of the petitioner would be to bring the decision of the District Court of Appeal into conflict with the decision of this court in this very controversy. In the decisions just mentioned the court did not deal with ratification and we find nothing in the language used that conveyed the thought that by referring to approval of bonds in advance of their issuance, the court implied that ratification would be precluded.
We are convinced, after careful study of the record, briefs and authorities cited, that no conflict exists between the decision of the District Court of Appeal and a decision of this court so the writ of certiorari is discharged.
TERRELL, C. J., and HOBSON, THORNAL and O’CONNELL, JJ., concur.