SHANNON,.Chief Jt^dge.
The appeal in this casé is restricted to the one question of whether or not a municipality has a right to divert part of lands dedicated for public park purposes to a roadway. ’ '
The motion of the appellee, City of St. Petersburg, to dismiss was granted by the chancellor. The appellants were given the opportunity to amend their complaint, but declined, and thereafter a dismissal was entered with prejudice.
The appellants allege that in 1926 a development company subdivided certain lands in St. Petersburg, Florida, and that for the purpose of attracting purchasers for the lots and to assist in attracting residents, and to. help in the .sale of the subdivided lands the developer improved “Eagle Lake” by the installation of drains and seawalls and did beautify the area immediately surrounding the lake and represented to purchasers in the subdivision that “Eagle Lake” and its immediate surrounding area would become a public park. The appellants further allege that by deed of October 21, 1926, the developer conveyed the lands with which we are concerned to the City and in the deed the description reads:
“That portion of Eagle Crest Subdivision known as Eagle Lake and the parkways surrounding such lake, containing approximately fourteen and one-half (14i/£) acres of park and water area; bordered on the North by Dulwich Avenue, on the East by Sixty-seventh Street, on the South by Tecla Avenue and on the West by Page Drive; according to the plat thereof filed in the records of Pinellas County, pages 6 — 7, Plat Book 13. For public park purposes.”
The appellants further allege:
“On the 3rd day of May, 1960, the City of St. Petersburg, by and through its governing body, the City Council of St. Petersburg, Florida, did mani *6 fest its intention to divert a portion of the real property hereinabove described to public street purposes, which these Plaintiffs allege anticipates the conversion of the existing 66th Street, between 9th Avenue North and Pasadena Avenue, to a main arterial highway, which will run through ‘Eagle Lake’ and the parkways surrounding said lake. This intention was manifested by a resolution passed by the City Council of the City of St. Peters-burg, Florida, a true copy of which is attached hereto and by reference made a portion hereof as Plaintiffs’ Exhibit ‘B’.”
The chancellor in his order of dismissal said in part:
“This cause came to be heard upon the defendants motion to dismiss the plaintiff’s complaint and the Court having heard argument of counsel and having examined the provisions of Chapter 167.09, Florida Statutes Annotated, and it appearing that the Defendants motion is well founded and should be granted * * * ”
The appellants have divided their argument between two points, but inasmuch as the argument on both goes toward the main issue, we will dispose of the case on the single question of whether or not the City has a right to divert the property from ■a park into a highway.
The appellants rely primarily upon the ■cases of Ocean Beach Realty Co. v. City of Miami Beach, 1932, 106 Fla. 392, 143 So. 301, and Kramer v. City of Lakeland, Fla. 1949, 38 So.2d 126.
In the Miami Beach case the Ocean Beach Realty Co., through a trustee, conveyed a parcel of land consisting of approximately 20 acres to the City of Miami Beach by warranty deed dated December 4, 1917. The deed contained the following provision:
“The property herein conveyed to the Town of Miami Beach is conveyed exclusively for park purposes, and shall never be used for commercial or residential purposes, and should the Town of Miami Beach at any time abandon said property as park property, or use the same for commercial or residential purposes, then in such event, all right, title and interest vested in the Town of Miami Beach shall immediately terminate and the legal title thereto shall immediately be revested in the Southern Bank & Trust Company as Trustee for the Ocean Beach Realty Company.” [106 Fla. 392, 143 So. 301.]
It was the contention of the plaintiff in that case that the lands had reverted to it because of violation by the City of this condition in the deed in that the City had abandoned for park purposes a part of the land so conveyed. The alleged abandonment consisted of the widening of Ocean Boulevard from a 25 foot street to a 40 foot street. In other words, the City was using a portion of the park land to widen the street. The trial court entered judgment for the defendant City and the Supreme Court affirmed. In so holding, the court stated:
“It appears to us that- there has been no abandonment of the property for park purposes in contemplation of the condition expressed in the deed and the evidence shows that the use of the narrow strip which was converted into a part of the street was conducive to the use of the land for park purposes, rather than an abandonment of it for park purposes. The result is to malee the park accessible to, and usuable by, a greater portion of the public than it would have been accessible to, or could have been used by, had not this improvement been made, and it is also shown that the chief purpose of the city in widening the street on this particular property was to acomplish this very purpose.”
The Lakeland case, supra, was decided in 1949, at which time there was in full force *7 and effect Sec: 167.09, Florida Statutes, F.S.A., which then read as follows:
“167.09 The city or town council may lay off such parks, streets, avenues, lanes, highways, canals, etc., as may seem necessary and expedient for the public health or interest, and open, fill in, grade, pave, dig, dredge, widen, deepen and otherwise extend, enlarge, change and improve the same; and said city or town council may alter, widen, fill in, grade, pave, or discontinue any public park, street, alley, highway or any other way.”
The Supreme Court, after stating the general rules controlling the diversion of the use of park property by a municipality, went on to say:
“Counsel for the Junior Chamber of Commerce cite Section 167.09 F.S.A., to sustain the contention that the City of Lakeland possesses plenary power over its streets, avenues, lanes, highways and parks. The answer to the contention is that the statute does not authorize the City of Lakeland to sell or transfer title to Munn’s Park which was dedicated to the general public of the City of Lakeland to be used and enjoyed by its citizens and visitors for what is commonly known and recognized as municipal park purposes. Neither does the cited statute authorize the City of Lakeland to divert the use of Munn’s Park for any purpose inconsistent with the particular use to which it was dedicated. * * * ” [38 So.2d 131.]
The court in the Kramer case, supra, held in effect that Sec. 167.09, F.S.A., as it existed at that time was not sufficient legislative authorization to allow the park acquired by dedication for park purposes on a subdivision plat to be diverted to other purposes. The Legislature may by statute empower a municipality to divert the use of property held for park purposes. In 10 McQuillan, Municipal Corporations, 3d Edition, Sec. 28.38, the following is found:
“As to parks, the general rule is that authority must be conferred by statute to enable a municipality to alienate lands held and used for public park purposes. Where lands have been dedir cated and used for a public park or square, the municipal corporation holds the title in trust for the public and has no power, unless specially authorized by the legislature, to appropriate such lands for the use and benefit of private persons or corporations, sell the same, or in any way divert the land from the uses and purposes of its original dedication. Legislative power to authorize the discontinuance of public parks and the sale of park lands cannot be questioned where the fee is in the city and when in so doing no private property is taken. * * * ”
The Florida Legislature by Ch. 25094, Sec. 1, Laws 1949, amended Sec. 167.09 to read as follows:
“The City or Town Council or Commission, whether created by special act or general law, may lay off such parks, public squares, streets, avenues, lanes, highways, canals, etc., as may seem necessary and expedient for the public health or interest, in open, fill in, grade, pave, dig, dredge, widen, deepen, and otherwise enlarge, change and improve the same; and the said City or Town Council or Commission may alter, widen, fill in, grade, pave, change or divert the use of all or any part thereof or discontinue any public park, public square, street, avenue, highway or any other way which has heretofore been or shall hereafter be laid out, either-by cities or persons, natural or artificial, fixed or established in any manner whatsoever; provided that no authority herein granted shall be applicable to any designated state road without the concurrence of the State Road Department.”
*8 Under the státúte as it now exists we hold that the City of St. Petersburg' was authorized to divert a portion of the park to the roadway.
Affirmed.
KANNER and SMITH, JJ., concur.