THORNAL, Justice.
We have for review by appeal a decree of a circuit court validating an issue of revenue bonds.
We must consider the legality of the proposed expenditure of bond proceeds.
By its Ordinance No. 60-16, the Board of County Commissioners of Dade County granted to Florida Power and Light Company a 30 year franchise to supply electricity to consumers in Dade County. The franchise was approved by a majority of the qualified electors of Dade County on May 24, 1960. By the franchise agreement the power company agreed to pay to the county annually an amount equal to 6% of its revenues from the sale of electricity within the county during each preceding calendar year. The power company was allowed credit for such amounts as it paid annually under any franchise granted by any municipality in the county.
On February 20, 1962, long after granting the franchise, the County Commission adopted its Resolution No. 7333 announcing a policy that the franchise revenues would be expended solely within the unincorporated areas of the county. In February 1964, the County Commission adopted its Ordinance No. 64 — 7, providing for the issuance of “Special Obligation and Refunding Improvement Bonds” in the aggregate principal amount of $8,500,000. The proceeds of the franchise revenues annually accruing to the county were pledged to liquidate the bonds. There was a specific exclusion of an ad valorem tax obligation. The amount of such revenues payable to the county on July 1, 1963, was $968,702.60. It *447 was estimated that the amount would increase from year to year and there is no contention that the anticipated franchise revenues would be insufficient to meet the county’s obligations on the bonds. The bond ordinance expressly repealed Resolution No. 7333, which had announced a policy regarding the expenditure of franchise revenues. The bond ordinance also provided that the proceeds from the bonds would be expended for a number of improvements. These included the sum of $3,150,000 to finance the-acquisition and improvement of lands for a new airport to replace the existing Tamiami Airport. It was also provided that the sum of $400,000 would be employed to construct and equip a Planetarium to be located on a parcel of county-owned land within the limits of the City of Miami where a county-owned museum is currently operating.
The bonds were validated by decree of the circuit court on April 6, 1964. This appeal followed.
The appellants include citizens and taxpayers who live in the unincorporated areas of Dade County and a nonprofit corporation which represents other such taxpayers. The principal attacks leveled against the revenue bonds are that the franchise revenues should be expended solely for the benefit of the unincorporated areas; that the construction of the airport to be operated by the Dade County Port Authority constitutes an illegal expenditure for the benefit of an entirely separate political entity; that the construction of the Planetarium to be operated by a non-profit organization constitutes an illegal commitment of the public credit.
The appellants who reside in the unincorporated areas assert that the franchise revenues are produced almost entirely by utility customers living in those areas. This results from the fact that payments to cities under municipal franchises are credited against the amounts which would otherwise be due the county. Appellants then contend that the revenues paid to the county should be spent entirely within the unincorporated areas and solely for the benefit of the people in those areas.
No one here questions the power of the County to grant the utility franchise. It was approved by a majority of the electors in a county-wide referendum. The proceeds of the franchise fee are public funds of Dade County. In the absence of some specific constitutional or legislative mandate, we are not aware of any rule that would compel the expenditure of county funds in any particular area of the county or for the benefit of any particular segment of the citizenry. County funds, generally, may be used to accomplish any legitimate county purpose. If we assume the legality of the proposal, as we do at this point, the wisdom or advisability of making the expenditure in any particular instance, is the responsibility of the governing authorities of the county. The mere fact that the expenditure will benefit all of the people of the county instead of those in a selected area, will not of itself destroy the validity of an otherwise legitimate county expenditure.
Appellants next contend that the contemplated expenditure of a part of the proceeds to acquire and improve a new county airport is invalid because the new facility will be supervised and operated by the Dade County Port Authority instead of the Board of County Commissioners. It is asserted that this constitutes the expenditure of public funds by one political entity for the benefit of another.
 The ready answer to this contention simply is that the Dade County Port Authority is merely a name given to the Board of County Commissioners “for administrative convenience” under Chapter 22963, Laws of Florida, 1945. The Port Authority is in reality the Board of County Commissioners under a different name. It is not a separate political subdivision. It is the Board of County Commissioners sitting in its capacity as an agency of Dade County to supervise the operation of that County’s airport.
*448 Under Section 1.01 A (2) 0f the Dade County Home Rule Charter the Commissioners are authorized to provide and operate air transportation terminals and facilities. For years the existing County Tami-ami Airport has been supervised and managed by the Port Authority pursuant to Chapter 22963, supra. The Port Authority, which is actually the alter ego of the County Commissioners is an integral part of the county government. It is not a political subdivision independent of Dade County. Since the operation of an airport is a proper county function we conclude that the expenditure of public funds for this purpose is legitimate. As an incident to the transaction it is contemplated that the existing airport will be deactivated and the property will be converted into a county operated park and recreational center. We have heretofore recognized the vital importance of air transportation facilities in Dade County, as well as their construction and operation under Chapter 22963, supra. Seaboard Airline R. Co. v. Peters, Fla., 43 So.2d 448; State v. Dade Co., 157 Fla. 859, 27 So.2d 283.
It will be recalled that the county proposes to expend $400,000 of the revenue bond proceeds to construct a county Planetarium. The building will be built on county-owned property located in the City of Miami, which is now occupied in part by a county-owned museum. The museum is supervised and operated by a non-profit quasi-public corporation known as the Museum of Science and Natural History. It is contemplated that the Planetarium will be similarly operated by this non-profit corporation as a public service under an arrangement with the County Commissioners. This is strictly an operating, managerial arrangement for the convenience of the public. While a fee will be charged for admission to the Planetarium, all expenses of the operation will be paid out of the income and no part of the proceeds, if any, will inure to private parties.
Under Section 1.01A(7) of the Home Rule Charter, the County Commissioners are authorized, to provide museums and other recreational and cultural facilities. The proposed Planetarium is well within this category of county functions. While the operating non-profit corporation is a membership organization, it is open to any member of the public who wishes to join. It is in no sense a private concern and its members volunteer their time and services in the conduct of its program. The actual beneficiaries of the arrangement are the county and its citizens.
The appellants contend that this type of arrangement is violative of Article IX, Section 10, Florida Constitution, F.S.A. We have held otherwise in Raney v. City of Lakeland, Fla., 88 So.2d 148; State v. City of Miami, Fla., 72 So.2d 655, and Overman v. State Board of Control, Fla., 62 So.2d 696. The construction and operation of the Planetarium is found to be a proper county purpose under the Home Rule Charter. The proposed method of operation through the facilities of the non-profit quasi-public organization does no violence to Article IX, Section 10, supra. The Planetarium will remain a public facility in every respect and will be operated for the public benefit, subject always to the ultimate control of the County Commissioners. The fact that the county will use the services of a voluntary non-profit quasi-public organization in handling the operating details does not destroy the public nature of the facility.
As we have stated on other occasions, the matter of the wisdom and advisability of projects of this type are beyond the pale of judicial scrutiny. Our responsibility is to consider and act upon the legality of the financing and the contemplated use of the funds. Finding as we do that the issuance of bonds and the employment of the proceeds are legal, the approving decree of the circuit judge must be affirmed.
It is so ordered.
DREW, C. J., THOMAS and HOBSON (Ret.), JJ., and MASON, Circuit Judge, concur.