QUESTIONS:
1. Does the proposed lease arrangement in which the City of Delray Beach proposes to lease a portion of municipally owned property, currently utilized as a park, to the Delray Beach Sickle Cell Fund, a private nonprofit corporation, violate s. 10, Art. VII of the Florida Constitution?
2. Would such a lease be valid if the city were given an absolute right to cancel the lease or the city council reserved the right to approve on a continuing basis the nature and extent of the programs to be carried out by the fund?
SUMMARY:
The City of Delray Beach has both general statutory authority and specific authority in its ordinances to lease a portion of municipal realty currently being utilized as a park to the Delray Beach Sickle Cell Fund, a nonprofit quasi-public corporation, provided the governing body determines the lease to be in the best interest of the city and the governing provisions of existing ordinances of the city relating to the leasing of city property are complied with. Such lease arrangement would not constitute the employment of public funds or property or the pledging of public credit for private purposes in violation of the Florida Constitution.
As your questions are interrelated, they will be answered together.
According to your letter, the City of Delray Beach proposes to lease a portion of municipal real property, currently being utilized as a park, to the Delray Beach Sickle Cell Fund, a private nonprofit corporation. The fund proposes to construct a building on the property at its expenses which, upon completion, would belong to the city. The city would then execute a 99-year lease of the property and the building constructed thereon to the fund. The facility would be used primarily for counseling, educational, and testing programs related to sickle cell disease, and such services furnished to the public by the fund would be available at no charge to all citizens of Delray Beach and the surrounding communities as well as to persons in the unincorporated areas of the county. It is my understanding that neither the lease nor the leasehold would be hypothecated in any way to fund the costs of construction or to secure any construction loan, nor would there be any enforceable lien on the property resulting from the proposed lease agreement or the proposed construction or any future improvements on the property.
This opinion is conditioned and predicated on the above-stated factual circumstances and other facts hereinafter recited. Section 10, Art. VII, State Const., prohibits the state; a county, municipality, a special district; or any agency thereof from lending or using its taxing power or credit to aid any private corporation, association, partnership, or person. The parameters of this constitutional provision have frequently been litigated within the state. The Florida Supreme Court has stated on several occasions that the purpose of this provision is `to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most incidentally benefited.' Bannon v. Port of Palm Beach District, 246 So.2d 737,741 (Fla. 1971). Cf. State v. Town of North Miami, 59 So.2d 779
(Fla. 1952); Bailey v. City of Tampa, 111 So. 119 (Fla. 1926). However, when a public purpose is involved, the courts have recognized that a municipality may accomplish this purpose through the medium of a nonprofit quasipublic corporation. See, generally, Burton v. Dade County, 166 So.2d 445 (Fla. 1964); Raney v. City of Lakeland, 88 So.2d 148 (Fla. 1956). Thus, the applicability of the constitutional prohibitions contained in s. 10, Art. VII, State Const., to the proposed lease agreement is dependent in part on whether a valid public purpose is involved. While the presence of a public purpose is ultimately a factual determination which must be made by the Legislature or judiciary, various standards can be applied to make an initial determination. In O'Neil v. Burns,198 So.2d 1, 4 (Fla. 1967), the Florida Supreme Court stated that there `must be some clearly identified and concrete public purpose as the primary objective and a reasonable expectation that such purpose will be accomplished . . . to justify the loan . . . [of] property to a nongovernmental entity such as a nonprofit corporation.' Cf. AGO's 075-71 and 071-241. In an earlier case, Burton v. Dade County, 166 So.2d 445 (Fla. 1964), the court sustained a county plan to construct a planetarium on county-owned property. Under the plan, the planetarium would be operated by a nonprofit corporation. Although admission fees would be collected, all expenses of operation would be paid from the proceeds, and no part of the money would inure to the corporation. The court considered the corporation quasi-public in nature and held that the `fact that the county will use the services of a voluntary nonprofit quasipublic organization in handling operating details does not destroy the public nature of the facility.' Id. at 448.
From your letter it appears that the Sickle Cell Fund may well qualify as a quasi-public organization — it is nonprofit, voluntary, open to the public, and dedicated to a valid public interest, i.e., public health. Additionally, the programs provided by the fund would be available to all members of the community without charge, not merely restricted to members of the fund. In light of other judicial decisions which have sustained municipal actions as serving a valid public purpose, it appears that the proposed programs would qualify as serving a valid public purpose. Moreover, the benefits to be derived by the public from these programs appear to be substantial. Cf. Burton, supra; Raney v. City of Lakeland, 88 So.2d 148 (Fla. 1956) (horticultural library); State v. City of Miami, 72 So.2d 655 (Fla. 1954) (storage for Orange Bowl parade paraphernalia); State ex rel. Barnett Nat. Bank of Deland v. Thursby, 150 So.2d 252 (Fla. 1933) (county fair); Overman v. State Board of Control, 62 So.2d 696
(Fla. 1952) (student dormitories); State v. City of Tampa,146 So.2d 100 (Fla. 1962) (covention center).
The principles set forth by the Florida Supreme Court in O'Neill,supra, also include a requirement that `some control [be] retained by the public authority to avoid frustration of the public purpose.' 198 So.2d at 4. What constitutes sufficient control is not, however, set out in the opinion and apparently must be determined on a case-by-case basis. In Burton, supra, the court found that as `the planetarium will remain a public facility in every respect and will be operated for the public benefit,subject always to the ultimate control of the countycommissioners,' (166 So.2d at 448; emphasis supplied), the constitutional prohibitions of s. 10, Art. VII, were avoided. In Raney, supra, the city retained the right to cancel the lease upon breach of any of its covenants. In your letter, you ask whether the lease, if not otherwise valid, would be validated by two additional provisions which specify that the city has the absolute right to cancel the lease and to approve on a continuing basis the programs carried on by the fund. The presence of these provisions in the proposed lease appear to satisfy the requirement of municipal `control' which the O'Neill court set forth. Thus, it appears advisable to include such provisions in the proposed lease arrangement to avoid any potential conflict with the standards enunciated by the courts. The lease should also contain provisions protecting the lessor with public liability insurance, protecting the city against any mechanics' liens or other liens of any nature, and convents against assignment and subletting, as well as cancellation and reversion provisions.
For such a lease to be valid, however, the municipality must have the statutory authority to lease municipal property. From your letter, it appears that the property is presently being used as a park, although it has never been dedicated to the public for such use. Municipalities were formerly empowered by the Legislature to discontinue or divert the use of public parks under s. 167.09(1), F. S. 1971, which provided in part:
 . . . said city or town council or commission may alter, widen, fill in, grade, pave, change, or divert the use of all or any part thereof or discontinue any public park, public square, street, avenue, highway, or any other way which has heretofore been or shall hereafter be laid out, either by cities or persons, natural or artificial, fixed or established in any manner whatsoever.
Chapter 167, F. S. 1971, was repealed in 1973, by the Municipal Home Rule Powers Act, Ch. 73-129, Laws of Florida (Ch. 166, F. S.). Under s. 5 of the act (now s. 166.042[1]), the repeal of certain chapters of the Florida Statutes, including Ch. 167, by Ch. 166 `shall not be interpreted to limit or restrict the powers of municipal officials.' Chapter 167, although repealed, is still viable as a grant of municipal power under Ch. 73-129, supra. Penn v. Pensacola-Escambia Governmental Center Authority, 311 So.2d 97,101 (Fla. 1975). Moreover, the act states that it is the legislative intent that
 . . . municipalities . . . continue to exercise all powers heretofore conferred on municipalities by the chapters enumerated above, but shall hereafter exercise those powers at their own discretion, subject only to the terms and conditions which they choose to prescribe.
Under the former Charter of the City of Delray Beach, s. 7(3), Ch. 25786, 1949, Laws of Florida, the city was empowered to `pave, . . . close, vacate, discontinue, extend . . . parks . . . or any part thereof . . . .' The charter also expressly provided that:
 . . . any property, real or personal, acquired by the city may be used, maintained, sold, exchanged or leased whenever the city council shall determine that it is to the best interests of the city to do so. . . . [s. 7(2), Ch. 25786, 1949, Laws of Florida, as amended by Ch. 27509, 1951, and Ch. 59-1222, Laws of Florida; emphasis supplied.]
Paragraph (d) of s. 7(2) provides that certain conditions must be met prior to the city's leasing municipal real property.
 . . . [P]ublic notice shall be given, which notice shall state the terms of such proposed lease, the date, hour and place where the city council shall consider any objections to such proposed lease, and shall also considered any further competitive bids for such real property being leased.
These former charter provisions were converted into city ordinances, subject to modification or repeal, by s. 166.021(5), F. S. In 1976 the city adopted a home rule charter. Section 1.02, Art. I of the new charter provides that all former charter provisions are continued as ordinances. Another section of the new charter, s. 1.02, Art. I, provides the broad basis for the exercise of municipal authority.
 The City of Delray Beach shall have governmental, corporate and proprietary powers to enable it to conduct municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.
Thus, the city initially appears to have the statutory authority to lease the municipal property, provided the city council determines that the lease is in `the best interest of the city' and the provisions of s. 7(2)(d) Ch. 25786, 1949, Laws of Florida, as amended by Ch. 27509, 1951, and Ch. 59-1222, Laws of Florida, as met.
An additional problem arises since the property in question is already being used for a valid public purpose. While the city appears to have statutory authority to divert the use of a park (see s. 167.09, F. S. 1971; s. 166.042, F. S.; s. 7(3), Ch. 25786, 1949, Laws of Florida, supra), many cases permitting the lease of public property to a private nonprofit corporation involved property which was not currently being used for a governmental purpose. For example, in Raney, supra, the lease specifically recited that the property was not currently needed by the city. Cf., 63 C.J.S. Municipal Corporation s. 964, (1950) (`Municipal corporations may lease its property to others when no longer required for its own purposes . . .'), and s. 167.77(1), F. S. 1971. Where the property in question is in current use by a municipality, the courts have on occasion permitted such a change. Kumick v. City of St. Petersburg, 136 So.2d 5 (2 D.C.A. Fla., 1961), involved the `one question of whether or not a municipality has a right to divert part of lands dedicated for public park purposes to a roadway.' Id. 5. Earlier cases had permitted such a change only when it did not constitute an actual abandonment of the dedication of the property for park purposes. E.g. Ocean Beach Realty Co. v. City of Miami Beach, 143 So. 301 (Fla. 1932); Kramer v. City of Lakeland, 38 So.2d 126 (Fla. 1948). In Kumick, however, under s. 167.09, F. S. 1949, the Supreme Court of Florida permitted the city to divert a portion of the park for a purpose different from the purpose for which the property has been dedicated. Although not specified in Kumick as a requirement, both uses were valid public purposes.
Applying these principles to your inquiry, it appears that the city may substitute one public purpose for another in the use of its property, especially as there is no evidence based upon your information that the property remaining as a park would be detrimentally affected. Moreover, I have been informed that the property was never formally dedicated as a public park and has not been used for park purposes a sufficient period of time for any prescriptive rights to have been acquired or to have vested. No provision in the charter which would restrict or otherwise prevent the city from disposing of municipal property in the manner contemplated by your letter has been brought to my attention. I, therefore, conclude that, provided that the city council determines the lease to be in `the best interests of the city' and the provisions of s. 7(2)(d), Ch. 25786, 1949, Laws of Florida, as amended by Ch. 27509, 1951, and Ch. 59-1222, Laws of Florida, are complied with, the proposed lease is authorized by general law and the ordinances of the City of Delray Beach.
Prepared by: Patricia R. Gleason Assistant Attorney General Joslyn Wilson Legal Research Assistant