Murray W. Overstreet, Jr. Osceola County Attorney Kissimmee
QUESTION:
May a board of county commissioners borrow money from a bank payable over a 3-year period for the purpose of making improvements to county roads?
SUMMARY:
The Osceola County Commission may borrow money from a local bank for the purpose of improvements to county roads, to be repaid over a 3-year period, providing no mortgage on county property is required and money used for repayment is derived from uncommitted county funds and non-ad valorem tax revenue. Taxing credit of a county cannot be pledged without an approving vote by electors affected. It is understood that the roads to be improved are in platted subdivisions with the county holding title to the rights-of-way in fee simple, or with the county having a right-of-way easement for county road purposes.
It is my understanding from your letter and from other communications with you that the Board of County Commissioners of Osceola County proposes to borrow money from a local bank for the sole purpose of making improvements to public roads in certain platted subdivisions. The principal is to be repaid with interest over a 3-year period of time. You state that these roads are public roads with the county holding title to the rights-of-way in fee simple or with the county having a right-of-way easement for county road purposes.
Given this set of facts, and subject to the qualifications discussed in this opinion, your question is answered in the affirmative.
Section 125.01(1), F. S., in pertinent part provides:
 (1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power shall include, but shall not be restricted to, the power to:
(m) Provide and regulate arterial, toll, and other roads. . . .
 (r) Levy and collect taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit, and special assessments, borrow and expend money, and issue bonds, revenue certificates, and other obligations of indebtedness, which power shall be exercised in such manner, and subject to such limitations, as may be provided by general law. . . . (Emphasis supplied.)
Section 336.02, F. S., vests the control of county roads, including the power and duty to maintain and repair such roads, in the board of county commissioners:
 The county commissioners are invested with the general superintendence and control of the county roads and structures within their respective counties, and may establish new roads, change and discontinue old roads, and keep the same in good repair in the manner herein provided. They shall be responsible for establishing the width and grade of such roads and structures in their respective counties.
It is therefore quite clear that the board of county commissioners has the power to make public road improvements and to borrow and use money for that purpose. County funds generally can be used to accomplish any legitimate county purpose. See Burton V. Dade County, 166 So.2d 445, 447 (Fla. 1964). However, there are certain qualifications and restrictions upon the county commissioners' power to borrow money for road improvement.
The first requirement for the expenditure of county funds is that the proposed expenditure must serve a public, as opposed to a private, purpose. See Burton v. Dade County, supra, at 448; City of Daytona Beach v. King, 181 So. 1 (Fla. 1938); Padgett v. Bay County, 187 So.2d 410 (1 D.C.A. Fla., 1966); Collins V. Jackson County, 156 So.2d 24 (1 D.C.A. Fla., 1963); and AGO 073-222. Cf. AGO 079-14, concluding that a municipality may not lawfully expend public funds to repair or maintain privately owned roads orstreets. See also s. 10, Art. VII, State Const., which prohibits a county from using its taxing power or credit to benefit private individuals or corporations; and O'Neill v. Burns, 198 So.2d 1, 4
(Fla. 1967) (holding that it is only when there is some clearly identified public purpose of primary, rather than incidental, benefit to the public that the state or one of its political subdivisions may disburse, loan, or pledge public funds or property to a nongovernmental entity). Thus, a county cannot expend county funds, regardless of the source, for the construction, maintenance, or improvement of privately owned roads. The roads for which the proposed improvements are to be made must, therefore, be owned in fee by the county or must be roads over which there is a public right-of-way easement for county road purposes.
You stated further that the local bank is considering requiring a mortgage on the roads as a condition for the loan. Such a condition would not permit a county to utilize the proposed financing procedure to make improvements to public roads in the absence of an approving referendum by the electors of the county. The granting of a mortgage would require a special election to be held to approve the proposed loan since the county would be required to levy a tax to prevent a foreclosure of the road in the event of a default. See Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971). The Nohrr case involved the Brevard County Educational Authority's proposal to build a dormitory and cafeteria on the Florida Institute of Technology to be financed by the issuance of $880,000 in revenue bonds. Concerning the mortgage requirement, the Florida Supreme Court in Nohrr stated that `a mortgage with the accompanying right of foreclosure is not constitutionally permissible without an election.' Id. at 311. See also AGO's 078-110, 077-14, 076-120, 074-269, and 073-164 and the authorities cited and discussed therein. The principles enunciated in these opinions apply with equal force and effect to the instant inquiry.
Additionally, the fact that the loan is to be paid over a 3-year period of time could require a validating referendum if the loan is to be repaid from ad valorem taxes. Section 12, Art. VII, State Const., provides:
 Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
 (a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation . . . . (Emphasis supplied.)
See Hollywood, Inc. v. Broward County, 108 So.2d 752 (Fla. 1959), and Hollywood, Inc. v. Broward County, 90 So.2d 47 (Fla. 1956) (holding that when a county acquires property subject to a mortgage, there must be a validating referendum).
Finally, it must be cautioned that such a financing proposal is permissible only if the money borrowed will be repaid solely from uncomitted county funds, such as racetrack funds, user fees, excise or license tax revenues, or the county's share of the state revenue-sharing funds; ad valorem taxes cannot be committed either directly or indirectly for such repayment. Repayment from ad valorem taxes would activate the proscriptions of s. 12, Art. VII, State Const. See Nohrr v. Brevard County Educational Facilities Authority, supra; Hollywood, Inc. v. Broward County, supra; and AGO 077-14. Further, if the county plans to use its portion of the state revenue-sharing funds, it cannot pledge any portion of those funds in excess of the county's `guaranteed entitlement.' Section218.21(6), F. S., defines `guaranteed entitlement,' and s. 218.25, F. S., in relevant part, provides:
 Local governments shall not use any portion of the moneys received in excess of the guaranteed entitlement from the revenue sharing trust funds created by this part to assign, pledge, or set aside as a trust for the payment of principal or interest on bonds, tax anticipation certificates, or any other form of indebtedness and there shall be no other use restriction on the revenues shared pursuant to this part. (Emphasis supplied.)
Therefore, the borrowed money could be repaid from moneys accruing to the county from sources other than ad valorem taxes, provided no other statutory or constitutional restrictions have been placed on the use of such funds.
In conclusion, counties are permitted to borrow money to be repaid over a 3-year period for the purpose of making improvements to county roads provided no mortgage is required and money used for repayment is derived from uncommitted funds and nonad valorem tax revenues. Ad valorem taxes or the taxing credit of the county cannot be pledged absent an approving referendum by the electors.
Prepared by:
Craig B. Willis Assistant Attorney General