Charles H. Spooner City Attorney Coral Gables
QUESTION:
Would the lease of municipally owned property for a nominal consideration to the Professional Artists' Guild, Inc., a nonprofit corporation, violate s. 10, Art. VII of the State Constitution?
SUMMARY:
The City of Coral Gables possesses statutory authority to use or lease municipal property to aid in the advancement or promotion of the arts for the benefit of the general public as distinguished from private institutions or their members. The lease of municipal property for nominal consideration to a nonprofit corporation is constitutional only if the primary objective is the furtherance of a public purpose and the lease is otherwise in compliance with principles set forth in judicial decisions construing applicable constitutional provisions.
According to your letter, the Professional Artists' Guild, Inc., a nonprofit corporation, has requested that the City of Coral Gables lease a municipally owned building for a nominal consideration to the organization. Apparently, the guild represents a coalition of various visual artists' organizations within the Coral Gables area. The guild proposes to use the municipal property to, among other things, provide a central location where the visual artists' organizations may hold meetings as well as to provide a place where the artists may exhibit their work. Other proposed uses of the property would include the offering of various lectures, workshops, and classes which would be available to the public, although your letter does not state whether the guild or its members would require the public to pay for these services.
An examination of the Charter of the City of Coral Gables, Ch. 13972, 1929, Laws of Florida, as amended, reveals that the city is authorized `[t]o acquire, and maintain and operate and/or assist in maintaining and operating . . . art museums, cultural and educational institutions.' Article I, s. 8(8), City of Coral Gables Charter. Thus it would appear that the city is authorized by law to use or lease municipal property for the purpose of the advancement of the arts in the community, provided that the lease is executed in compliance with the procedures forth elsewhere in the charter. See Art. VIII, s. 86. Accordingly, the use or lease of municipal property for such purpose and for the public benefit would, if otherwise constitutional, serve a valid public or municipal purpose. See generally Raney v. City of Lakeland,88 So.2d 148, 151 (Fla. 1956); Burton v. Dade County, 166 So.2d 445,448 (Fla. 1964); and AGO 079-25.
Turning now to the constitutional issue raised by your inquiry, I note that s. 10, Art. VII, State Const., prohibits a municipality (and other governmental entities) from giving, lending, or using its taxing power or credit to aid any private corporation, association, partnership, or person. The scope of this constitutional provision and of its predecessors, ss. 7 and 10, Art. IX, State Const. 1885, has been extensively litigated. Generally, however, it may be stated that the prohibition operates to require that public funds or property be used only for public purposes and not for private purposes. See Bannon v. Port of Palm Beach District, 246 So.2d 737, 741 (Fla. 1971), in which the court ruled that the intent of s. 10, Art. VII, State Const., is `to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most incidentally benefited.' Cf. State v. Town of North Miami,59 So.2d 779 (Fla. 1952).
The Florida Supreme Court has held, however, that a governmental entity may utilize a nonprofit corporation as a medium to accomplish a public purpose provided that certain conditions are met. As stated in O'Neill v. Burns, 198 So.2d 1, 4 (Fla. 1967):
 It is only when there is some clearly identified and concrete public purpose as the primary objective and a reasonable expectation that such purpose will be substantially and effectively accomplished, that the state or its subdivision may disburse, loan or pledge public funds or property to a non-governmental entity such as a non-profit corporation . . . .
It is not possible for this office to definitively determine whether the proposed lease under consideration would withstand judicial scrutiny under the the O'Neill standard. Such a finding would necessarily involve mixed questions of law and fact which should be resolved by the local governing body with the advice of its attorney rather than by this office. However, the following observations are set forth to be of some assistance in this matter.
A review of the cases construing s. 10, Art. VII supra, indicates that the validity of the use of public funds or property by a nonprofit corporation is often dependent upon the extent to which the facilities and programs of the corporation are available and beneficial to the general public, as distinguished from the members of the nonprofit corporation. For example, in Raney v. City of Lakeland, supra, the Florida Supreme Court upheld the constitutionality of a long-term lease for nominal consideration of publicly owned land to a nonprofit corporation for the purpose of establishing and maintaining a public horticultural library. In approving the transaction, the court observed that the corporation, a garden club, had `agreed to maintain a service for . . . the benefit of the public generally.' 88 So.2d 180. In addition, it was noted that the garden club was `quasi-public in nature' and under the terms of the lease the club was obligated `to render a public service unlimited and unrestricted to its own membership.' Id. at p. 151. Compare O'Neill v. Burns, supra, in which the Florida Supreme Court invalidated a $50,000 legislative appropriation to the Junior Chamber International, a nonprofit corporation, for the purpose of constructing a permanent headquarters building for the organization. The court distinguished the Raney decision and noted: `In the cause before us there is no obligation that the building or lands involved are to serve any public agency or the public generally.' 198 So.2d at 3. The lease of municipal property at nominal cost to a nonprofit corporation was also considered in State v. City of Miami,72 So.2d 655 (Fla. 1954). In that case, the court approved the construction of a warehouse to be leased to a nonprofit organization known as the `Orange Bowl Committee' for the purpose of storing Orange Bowl parade paraphernalia. In reaching its conclusion, the court stated at p. 656:
 As noted above, the Committee is a non-profit organization whose members derive no pecuniary gain whatsoever from their activities, although we have no doubt that the personal satisfactions and spiritual values which accrue from their unselfish devotion to this public service are far more rewarding to them than would be any monetary compensation. (Emphasis supplied.)
Similarly, in Burton v. Dade County, supra, the court reviewed a plan to construct a planetarium on county-owned property. The plan called for a nonprofit quasi-public corporation to operate the planetarium. The court approved the proposed arrangement, holding:
 [T]he Planetarium will be . . . operated by this non-profit corporation as a public service under an arrangement with the County Commissioners. This is strictly an operating, managerial arrangement for the convenience of the public. While a fee will be charged for admission to the Planetarium, all expenses of the operation will be paid out of the income and no part of the proceeds, if any, will inure to private parties. [166 So.2d at 448; emphasis supplied.]
From the foregoing, it should be evident that the mere fact that a corporation is nonprofit does not, in itself, validate its use of public funds or property. For purposes of s. 10, Art. VII of the Constitution, the corporation should also be quasi-public in nature, i.e., an organization whose primary objective is to render a public service not limited to its own members. See AGO 077-27, in which this office noted that a lease of municipal property at nominal consideration to a Sickle Cell Fund would probably not violate s. 10, Art. VII of the State Constitution because, among other things, the fund `is nonprofit, voluntary, open to the public and dedicated to a valid public interest, i.e., public health' and `the programs provided by the fund would be available to all members of the community, without charges, not merely restricted to members of the fund.'
It is also important to note that the Supreme Court has stated that s. 10, Art. VII, supra, requires that the public authority retain sufficient control over the project to justify the disbursement, loan, or pledge of public funds or property to a nongovernmental entity such as a nonprofit corporation. See
O'Neill v. Burns, supra, at 4; and Burton v. Dade County, supra, at 448. In AGO 077-27, this office observed that the court has not yet expressly delineated what constitutes sufficient control by the public authority; thus the adequacy of such control `apparently must be determined on a case-by-case basis.' However, in that opinion it was deemed `advisable' that a proposed lease of municipal property to a nonprofit quasi-public corporation contain provisions which would specify that the municipality possessed an absolute right to cancel the lease and to approve on a continuing basis the programs carred on by the corporation.
In summary, therefore, it is apparent that the City of Coral Gables possesses statutory authority to use or lease municipal property to aid in the advancement or promotion of the arts for the benefit of the general public as distinguished from private institutions or their members. The lease of municipal property for nominal consideration to a nonprofit corporation such as the Professional Artists' Guild is constitutional only if the primary
objective is the furtherance of a public purpose and the lease is otherwise in compliance with principles set forth in judicial decisions construing s. 10, Art. VII, State Const., and its predecessors.
Prepared by:
Patricia R. Gleason Assistant Attorney General