Mr. James G. Yaeger County Attorney Lee County Post Office Box 398 Fort Myers, Florida 33902
Dear Mr. Yaeger:
This is in response to your request for an opinion on the following questions:
 1. CAN A COUNTY CHARGE A SERVICE FEE TO THE USER OF SPECIALIZED COMPUTER ACCESS TO PUBLIC RECORDS WHERE THERE REMAINS AN ALTERNATIVE ACCESS AVAILABLE AT NO COST?
 2. WOULD EXPENDITURE OF PUBLIC FUNDS ON THE R.E.N.T.A.L. SYSTEM [REAL ESTATE NETWORK TO ALL LOCATIONS] QUALIFY AS A VALID "PUBLIC PURPOSE?"
 3. WOULD THE R.E.N.T.A.L. SYSTEM VIOLATE ARTICLE VII, SECTION 10, FLORIDA CONSTITUTION?
 4. IF THE ANSWER TO QUESTION THREE IS IN THE AFFIRMATIVE, WOULD THE REQUIREMENT THAT ALL INTERESTED USERS BUY THEIR OWN EQUIPMENT INDEPENDENT OF THE COUNTY SOLVE THE PROBLEM?
Your inquiry states that your county data processing department and your county property appraiser's office have recently submitted a proposal to provide computer access to members of the public to several Lee County data files. Your letter describes the purpose of this system as follows:
 (1) Provide high use members of the public increased and more convenient access to particular areas of County data. (2) Reduce the congestion in certain areas of the Courthouse that have many members of the public seeking information. (3) Reduce the impact on County personnel needed to retrieve this information for these large quantity users, thereby saving County money and resources. (4) Recover monies through charging subscription fees which would be used to defray the costs of the system itself and also to defray the costs of managing and maintaining various sources of information that the County is required to keep.
Your letter also states that the purpose of this "Real Estate Network To All Locations (R.E.N.T.A.L.)" system is to allow access to several of the Lee County data files on a subscription fee basis. It is intended for use by real estate brokers, mortgage brokers, insurance companies, title companies, savings and loan institutions, law offices and any other interested parties such as private industry appraisers. In order to keep the cost within the reach of a majority of the interested parties it is proposed that the service be offered in segments. The basic service would consist of viewing the property appraiser's name address and legal (NAL) file for a fee of $50.00 per month which includes a terminal, a modem (equipment that turns computer language into telephone signal), and service of the equipment. Other services such as official records, tax collections and back taxes would be available at an incremental cost of $15.00 per month for each additional service. At the time that Land Information Management Systems ("LIMS") becomes a reality, it would be available at a cost to be decided upon at a later date. None of the subscribers will have the ability to update any of the data files. They will only be able to view the information. There are safeguards to insure that nothing can happen to the files. In addition, if one of the agencies does not want certain data displayed for some reason, that data can be locked out from the screen. The equipment would be purchased by the Data Center and leased to the subscribers. The $50.00 per month was arrived at by amortizing the cost of the equipment over a four (4) year period at 10%. The actual cost of the Data Center is $43.00 per month and $7.00 was added for equipment maintenance and usage.
Your inquiry notes that there are some advantages to Lee County in doing this in addition to the convenience of the subscribers. Since parking is somewhat of a problem it is to your benefit that fewer people come downtown to county offices. It will no longer be necessary for abstractors to come to the courthouse to get the information they need. Congestion in the courthouse and the need for additional personnel to service these subscribers would be reduced. Another advantage is that small county departments that have very low volumes will be able to afford a terminal. The dedicated, more expensive terminals cost about $500.00 per month to remote locations and low volume users cannot justify that kind of expense. There is a rather large cost associated with operating a Data Center and the revenue from this could help to defray some of these costs.
QUESTIONS ONE AND FOUR
For the following reasons, your first and fourth questions are answered in the negative. Chapter 119 represents a legislative scheme which seeks to control the subject of public records at all levels of government, and when that chapter is read in conjunction with Ch. 267, F.S., it is apparent that such state control over public records is exclusive, and that these areas should not be regarded as subjects of attempted local regulation by local governmental officials by ordinance or otherwise.
Section 119.01, F.S., as amended by s 2 of Ch. 83-286, Laws of Florida, provides in relevant part that "[i]t is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person." Section 119.07(1)(a), F.S. (1982 Supp.), provides:
 Every person who has custody of public records shall permit the records to be inspected and examined by any person desiring to do so, at reasonable times, under reasonable conditions, and under supervision by the custodian of the records or his designee. The custodian shall furnish copies or certified copies of the records upon payment of fees as prescribed by law or, if fees are not prescribed by law, upon payment of the actual cost of duplication of the copies. Unless otherwise provided by law, the fees to be charged for duplication of public records shall be collected, deposited, and accounted for in the manner prescribed for other operating funds of the agency. (e.s.)
And see, s 119.08, F.S., which provides procedures for photographing public records. Neither s 119.07(1)(a) or s 119.08, nor any other provision of Ch. 119, the Public Records Law, authorizes custodians of public records to provide at public expense a specialized computer access system, such as the above described R.E.N.T.A.L. system to "high use members of the public" so as to provide them "increased and more convenient access to particular areas of county data," or to charge the above described service fee or subscription fee to such volume users for inspection or viewing of public records. Sections 119.07(1)(a) and 119.08 clearly and specifically prescribe the authority, duties and fees of the custodians of public records, and provide the methods by which public records may be inspected, examined and photographed and the charges the custodians may make in connection with such inspection, examination and photographing of the public records. Where a statute enumerates the things on which it is to operate, it is to be construed as excluding from its operation all things not expressly mentioned therein. Alsop v. Pierce,19 So.2d 799 (Fla. 1944); Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952). Moreover, where a statute expressly provides the manner of doing a thing, it impliedly prohibits its being done in any other way. See, Weinberger v. Board of Public Instruction of St. Johns County, 112 So. 253 (Fla. 1927); In re Advisory Opinion of the Governor Civil Rights, 306 So.2d 520 (Fla. 1975); State ex rel. Reno v. Barquet, 358 So.2d 230 (Fla. 1978); cf., AGO 82-23. It has long been the position of this office that in the absence of a statute to the contrary, public information must be open to the public without charge. See, AGO's 76-34 and 75-50 (concluding that the Public Records Law does not authorize a public official to impose a fee for the inspection of public documents). Attorney General Opinion 76-34 dealt specifically with the requirement that the public have free access to a computer terminal for the mere inspection and examination of public records, absent specific statutory authorization for a charge, or fee. See also, Open Government Manual, Office of the Attorney General, 1982, p. 56; State ex rel. Davidson v. Couch, 156 So. 297, 300 (Fla. 1934); Rawls v. State, 122 So. 222 (Fla. 1929). Moreover, the provision of access to public records is a statutory duty imposed by the Legislature upon all records custodians, and should not generally be considered a revenue-generating operation. Additionally, the mandatory inspection provisions of Ch. 119 were intended to operate regardless of the physical form or characteristics of particular records. See, s 119.011(1) (defining the term "public record" as it is used in Ch. 119).
If the furnishing of copies were involved, the custodian would be allowed to charge for the actual cost of duplication of those copies. See, s 119.07(1)(a). However, duplication of records is not involved in this instance.
In view of the principles of law discussed above, and in the absence of statutory authority for the above-described fee or charge, I must conclude that the levying of the above-described fee or charge is not permissible.
QUESTIONS TWO AND THREE
The answer to your first question makes it unnecessary to answer your second and third questions. However, I will make the following observations concerning these questions. Your second and third questions ask if expenditure of public funds on a "R.E.N.T.A.L." system would qualify as a valid public purpose and whether the use of this system by private parties would constitute a violation of s 10, Art. VII, State Const. The paramount consideration for the expenditure of public funds is that the proposed expenditure must serve a public, as opposed to a private, purpose. See, e.g., Burton v. Dade County, 166 So.2d 445
(Fla. 1964); O'Neill v. Burns, 198 So.2d 1 (Fla. 1967). The purpose of s 10 is to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most incidentally benefited. Bannon v. Port of Palm Beach District, 246 So.2d 737, 741 (Fla. 1971). Compare, AGO's 83-45 (concluding that s 10, Art. VII did not prohibit expenditure of public funds for computer system placed in private offices as pilot project to study cost effectiveness of system, where pilot project authorized by statute) and 82-81 (concluding that expenditure of public money for computer system in private tag agency offices operating as agents of county tax collectors did not violate s 10, Art. VII).
However, the question of whether a particular use or expenditure of public funds has as its primary purpose and benefit a public purpose is a factual determination, and constitutes a mixed question of fact and law which our office cannot determine. I will note however, that the facts set forth in your letter are an insufficient basis on which to justify a conclusion by our office that such an expenditure is primarily for a public purpose and only incidentally benefits private parties.
In summary, until legislatively determined otherwise, it is my opinion that a county or its custodians of public records may not provide at public expense a specialized computer access system to provide certain volume users access to particular areas of county data or public records or charge a service fee or subscription fee to such volume users for inspecting or viewing public records in the absence of statutory authorization therefor.
Sincerely,
Jim Smith Attorney General
Prepared by:
Anne Curtis Terry Assistant Attorney General