Mr. Conrad C. Bishop, Jr. County Attorney Lafayette County Post Office Box 167 Perry, Florida 32347
Dear Mr. Bishop:
This is in response to your request for an Attorney General's Opinion on the following question:
 IS THE BOARD OF COUNTY COMMISSIONERS OF LAFAYETTE COUNTY AUTHORIZED TO DONATE REVENUE SHARING MONIES TO A NONPROFIT SENIOR CITIZENS CLUB SO THAT MEMBERS OF THE CLUB MAY TAKE FIELD TRIPS?
I am advised that the subject senior citizens club is a nonprofit organization, membership in which is open to the public. I will assume that the members of this club are Lafayette County residents. No determination has been made by the Lafayette County Commission that such an expenditure would satisfy a public purpose. Subsequent conversations with your office reveal that the revenue sharing monies to which you refer are to be received and distributed pursuant to Part II, Ch. 218, F.S.
Public funds may properly be spent only for a public purpose or function which is expressly authorized by law or which must be necessarily implied to carry out the purpose or function expressly authorized. See, s. 10, Art. VII, State Const. See, e.g., Davis v. Keen, 192 So. 200 (Fla. 1939); State v. Town of North Miami,59 So.2d 779 (Fla. 1952); AGO's 83-6, 72-198. Thus, county funds may be used only for a county purpose and only when properly budgeted for such a use. The purpose of s. 10, Art. VII, State Const. (which prohibits the state, a county, municipality, school district, special district, or any agency thereof from lending or using its taxing power or credit to aid any corporation, association, partnership or person) is to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most incidentally benefitted. See, e.g., Bannon v. Port of Palm Beach District, 246 So.2d 737,741 (Fla. 1971).
However, when a public purpose is involved, the courts and this office have recognized that a county or municipality may accomplish this purpose through the medium of a nonprofit quasi-public corporation. In AGO 72-198 this office, concluding that the rehabilitation of youthful drug addicts served a public purpose, stated that it was appropriate to expend municipal funds to contribute to a private nonprofit organization which rehabilitates such drug dependents. The municipal funds were disbursed to the private nonprofit organization on the basis of each drug addict of the city who had completed the rehabilitation program operated by the organization; provision for the periodic auditing of the records of the program by the appropriate examining authority on behalf of the municipality was made. This office determined that, in rehabilitating youthful drug addicts of the municipality, this organization served a municipal as well as a state purpose. As was stated in the opinion, "rather than establish its own municipally owned and operated drug abuse education or treatment program, under appropriate charter-act or home rule ordinance authority, the municipality may carry out such a program through an approved private organization. . . ." The opinion went on to acknowledge that the procedures for payment of municipal funds and periodic auditing of the organization's records appeared to be ample safeguards to insure that municipal funds would be used only for a municipal purpose. And see, AGO 71-150 (contributions to the Red Cross Blood Bank from county funds authorized when such contributions are made on an item-by-item basis after each claim has been audited and approved by the county commissioners and clerk); AGO 83-6 (municipality may contribute directly, or indirectly through the purchase of equipment, to a nonprofit, quasi-public corporation's football program if such a program is open to the public and satisfies a need for a public recreation program); AGO 75-71 (public purposes may be carried out through private nonprofit corporations as well as through public agencies).
In the case of Burton v. Dade County, 166 So.2d 445, 447
(Fla. 1964), the Court, in considering the appropriateness of the expenditure of county funds for the construction of a county planetarium which was to be supervised and operated by a nonprofit, quasi-public corporation, stated:
 In the absence of some specific constitutional or legislative mandate, we are not aware of any rule that would compel the expenditure of county funds in any particular area of the county or for the benefit of any particular segment of the citizenry. County funds, generally, may be used to accomplish any legitimate county purpose.
The Court in Burton assumed the legality of the proposal and acknowledged that "the wisdom or advisability of making [an] expenditure [of county funds] in any particular instance, is the responsibility of the governing authorities of the county." Supra at 447. And see, AGO 77-27 which emphasized that the presence of a public purpose is ultimately a factual determination for the Legislature (in this case the legislative and governing body of the county) or the courts, but that initially there must be both some clearly identified and concrete public purpose as a primary objective, and a reasonable expectation that the purpose will be accomplished.
Chapter 125, F.S., implements the provisions of s. 1(f), Art. VIII, State Const., which gives counties not operating under county charters, such as Lafayette County, such powers of self-government as are provided by general or special law. Section125.01(1)(f), F.S., states that the legislative and governing body of a county possesses the power to:
 Provide parks, preserves, playgrounds, recreation areas, libraries, museums, historical commissions, and other recreation and cultural facilities and programs. (e.s.)
Thus, s. 125.01(1)(f), F.S., authorizes the board of county commissioners to provide for recreation and cultural programs. The determination, however, of the presence of a public purpose in any particular project or activity is ultimately a factual determination to be made by the board of county commissioners. Cf., AGO 77-27, which concluded, in light of O'Neill v. Burns,198 So.2d 1 (Fla. 1967), that some degree of control over public funds or property should be retained by the public authority to assure accomplishment of the public purpose; AGO 54-93.
Your letter states that the funds to be donated to the organization will be revenue sharing funds as described in Part II, Ch. 218, F.S. This part, which comprises the Florida Revenue Sharing Act of 1972, authorizes those units of local government as defined in s. 218.21(1), F.S., to participate in revenue sharing. See, s. 218.21(1), defining "unit of local government" as a county or municipal government; see also, s. 218.21(3), F.S. Cf., AGO's 73-246, 74-367. The Revenue Sharing Trust Fund for Counties is created and established by s. 218.215(1), F.S. To be eligible to participate in revenue sharing beyond the minimum entitlement, defined in s. 218.21(7), F.S., a unit of local government must comply with the provisions of s. 218.23, F.S., which also provides the formula for determining entitlement for eligible counties in subsection (2). Section 218.25 restricts the use of moneys received in excess of the guaranteed entitlement defined by s.218.21(6), F.S., by stating in pertinent part:
 Local governments shall not use any portion of the moneys received in excess of the guaranteed entitlement from the revenue sharing trust funds created by this part to assign, pledge, or set aside as a trust for the payment of principal or interest on bonds, tax anticipation certificates, or any other form of indebtedness, and there shall be no other use restriction on revenues shared pursuant to this part.
The restriction limiting the use of the moneys received in excess of the "guaranteed entitlement" as set forth therein would have to be complied with. Accordingly, funds received pursuant to the Revenue Sharing Act could be used for the purpose contemplated by the Lafayette County Commission, subject to the restrictions found in s. 218.25, F.S. See also, AGO's 78-110, 77-14, 73-305. Cf., AGO 82-94 (reading ss. 218.25 and 206.605[3], F.S., together, a local government can use that part of the guaranteed entitlement defined in s. 218.21[6], F.S., which is composed of motor fuel revenues but only for the purposes set out in s. 206.605[3], F.S.) and Rule 12-10.07, F.A.C.
In sum, it is my opinion that the Board of County Commissioners of Lafayette County is authorized to donate revenue sharing monies (as restricted by s. 218.25, F.S.) to a nonprofit senior citizens organization so that county residents who are members of the club may take field trips provided that the program is open to the public and is determined by the board of county commissioners to serve a valid public purpose and provided that proper safeguards are implemented to assure accomplishment of the public purpose.
Sincerely,
Jim Smith Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General